STATE of Utah, Plaintiff and Appellee,

v.

Gilberto SUAREZ, Defendant and Appellant.

Case No. 880309–CA.

Court of Appeals of Utah.

May 25, 1990.

Lisa J. Remal, Richard G. Uday, Salt Lake City, for defendant and appellant.

R. Paul Van Dam, Elizabeth Holbrook, Salt Lake City, for plaintiff and appellee.

Before DAVIDSON, BILLINGS and ORME, JJ.

## OPINION

ORME, Judge:

■ Gilberto Suarez appeals his conviction for aggravated assault. On appeal he makes two challenges to the jury selection process and also argues the evidence was insufficient to support his conviction. His challenge to the sufficiency of the evidence is without merit.[1] We conclude one of defendant's arguments about jury selection is well-taken and remand for a new trial.

## FACTS

In 1988, defendant was arrested for aggravated assault, a third degree felony in violation of Utah Code Ann. § 76–5–103 (1988), and for giving a false name to a police officer, a class C misdemeanor in violation of Utah Code Ann. § 76–8–507 (1989). The misdemeanor charge was dismissed and defendant pleaded not guilty to the aggravated assault charge.

Defendant's trial was commenced on March 31, 1988. Prospective jurors were impaneled and the voir dire process begun. During a break in voir dire, the jurors were exposed to evidence that defendant was in custody. For this reason, and because there was an insufficient number of jury panelists, a mistrial was declared and the case was rescheduled to begin later the same afternoon with another jury panel.

The court instructed its clerk to prepare a new jury list. To obtain a sufficient number of jurors for the afternoon jury selection process, the court determined to use jurors who had been called to serve that day, had been assigned to possible service in other courtrooms, but had not been chosen for actual service on a jury. Defense counsel did not object to this procedure when the court first announced its intentions.

The court's clerk provided a list of twenty-two potential jurors for the afternoon jury selection process. Thirteen of the twenty-two had initially been assigned to serve in Judge Russon's court but were either extra venirepersons, subjects of challenges for cause, or subjects of peremptory challenges.

At the outset of the afternoon's proceedings, defense counsel objected to the use of jurors from Judge Russon's court. Defense counsel argued that the court's method of selecting potential jurors to comprise the afternoon panel was not in keeping with the Utah code and furthermore denied defendant his constitutional right to a jury selected from a representative cross-section of the community. After hearing from defense counsel and the state, the court denied defendant's motion to quash the jury panel.[2]

The court then undertook to voir dire the prospective jurors. At one point during voir dire, potential jurors were asked whether they were acquainted with or related to police officers. When particular jurors responded affirmatively, the court then asked whether, in light of their ac-

---

1. We have discretion to determine which issues and claims properly raised on appeal merit a written analysis. *State v. Carter,* 776 P.2d 886, 888–89 (Utah 1989). Having considered defendant's insufficiency of the evidence claim, we have determined that it is without merit and we decline to address it. *Id.* at 889.

2. The crux of defendant's argument for quashing the jury panel was that the jurors who had been voir dired earlier that day could more readily manipulate the system to either remain on, or be excused from, the jury panel. In denying defendant's motion, the court stated:

I certainly cannot find the jurors to be prejudiced because "they figured out one way to get out of the system" in one court and now they are going to figure it out here, because to me I have to look at jurors as being honest and responding to my questions truthfully. It went on to note that under the current system "we frequently have jurors that have sat on prior panels, we frequently have jurors that were removed by peremptory challenges from prior panels" and that mere fact would not be sufficient in other cases to have the jurors removed for cause.

quaintance with the officers, the jurors would be able to act fairly and impartially in the case. One juror, a Mr. Wolford, responded that he knew some county deputies quite well but that his acquaintance with the deputies would not affect his impartiality.

It seems clear from our review of the record as a whole that after interrogating the prospective jurors, defense counsel, at an unrecorded bench conference,[3] requested the court to excuse juror Wolford for cause because he had expressed a bias in favor of police officer testimony when interrogated by Judge Russon earlier that day. The court declined to excuse juror Wolford for cause.

After voir dire, also in an unrecorded bench conference,[4] the court excused two jurors for cause and counsel exercised their peremptory challenges. Because the court declined to excuse juror Wolford for cause, defense counsel was forced to use one of her peremptory challenges to have him removed. The jury was then chosen and the trial proceeded.

■ After the conclusion of the state's case, on the second day of trial, defense counsel moved for a directed verdict. The motion was denied. At the same time, defense counsel requested permission to put into the record her earlier request to have juror Wolford excused for cause.[5] She submitted an affidavit from Nancy Bergeson, a defense attorney in the trial commenced before Judge Russon, from whose courtroom several of the prospective jurors in the instant case had been obtained. The affidavit stated that juror Wolford indicated on voir dire in Judge Russon's court that

> he tended to give the testimony of police officers more weight simply because they were police officers, and that he believed police officers were right ninety-five percent (95%) of the time [and that] because of his answer regarding the testimony of police officers, Judge Russon excused Mr. Wolford for cause from the venire.

Defense counsel argued that juror Wolford should have been excused for cause in defendant's case because of the bias he indicated in Judge Russon's court and his lack of candor before the court in the instant case. No objection was made that the affidavit contained information which had not been conveyed to the court at the prior conference at side bar or that the affidavit was otherwise inadequate or inaccurate.

The court then explained the basis for its denial of defense counsel's motion to excuse juror Wolford for cause. It stated that juror Wolford may have misunderstood the question or answered incorrectly in Judge Russon's court and had simply responded more accurately in this case. Moreover, the court stated that whatever the reason for juror Wolford's conflicting

---

3. Defense counsel argues on appeal that she objected to juror Wolford at a side bar conference after the trial court voir dired the jury and before the exercise of peremptory challenges. An off-the-record discussion is noted in the transcript at this juncture in the proceedings. Neither this objection when made, nor the proceedings in which jurors were excused for cause, were reported. "[A] record should be made of *all* proceedings of courts of record.... That precept applies to conferences in chambers [and at the bench] as well as more formal proceedings." *Birch v. Birch,* 771 P.2d 1114, 1116 (Utah Ct.App.1989) (emphasis in original). *See Briggs v. Holcomb,* 740 P.2d 281, 283 (Utah Ct.App. 1987) ("Although consistently making a record of all proceedings imposes a greater burden on the trial court and court reporters, it is impossible for an appellate court to review what may ultimately prove to be important proceedings when no record of them has been made.").

4. *See* note 3, *supra.*

5. Despite the incomplete nature of the record, *see* note 3, *supra,* it is apparent that defense counsel made an earlier, timely objection. On the second day of trial, when defense counsel asked to place her objection on the record, the court accommodated her request and accepted without comment her representation that the objection had been timely made but not recorded. We may infer from the court's silence that defense counsel in fact made the earlier objection in a timely manner as she stated. Although the side bar conference should have been recorded, defense counsel's later comments on the record were sufficient to preserve the issue for appeal.

responses,[6] defendant was not prejudiced because the defense utilized a peremptory challenge and excluded him from the jury.

The trial continued and at its conclusion defendant was convicted of aggravated assault. On appeal, defendant argues that the process by which the jury list for his trial was created violated applicable statutory provisions and his constitutional right to an impartial jury. Second, he argues that the trial court committed prejudicial error when it failed to excuse juror Wolford for cause.

## CHALLENGE TO THE JURY LIST

■■■■ Defendant argues that the trial court failed to comply with Utah Code Ann. § 78–46–13 (1987) when it utilized jurors who had been excused from Judge Russon's court earlier that same day.[7] Section 78–46–13 provides in pertinent part, with our emphasis:

(1) Jury panels shall be drawn from the qualified jury wheel as needed or ordered by the court.

. . . .

(4) If there is an unanticipated shortage of available trial jurors drawn from a qualified jury wheel, the court *may* require the clerk of the court to summon a sufficient number of trial jurors select-

ed at random by the court from the qualified jury wheel.

In order to prevail, defendant must demonstrate "a substantial failure to comply with [§ 78–46–13] *and* ... that actual and substantial injustice and prejudice has resulted." Utah Code Ann. § 78–46–16(2) (1987) (emphasis added).

Defendant's argument fails. We see no "substantial failure to comply" with the statute.

Defendant does not dispute the fact that all of the prospective jurors utilized in this case were taken initially from the qualified jury wheel. Rather, he argues that the thirteen jurors from Judge Russon's court were not *randomly* drawn from the complete jury wheel.

Defendant argues that § 78–46–13(4) gives the trial court two options in the face of a shortage of jurors—to summon jurors from the complete jury wheel or to declare a mistrial. We disagree. Section 78–46–13(4) is couched in permissive terms and appears to give the court some discretion on how to make up a shortage of jurors. Although the court *may* direct the clerk of the court to summon jurors at random from the jury wheel, the statute does not require it to do so.

Utah appellate courts have never addressed this precise question before.[8]

---

6. When defense counsel first raised the problem with the court, consultation with Judge Russon and/or exploration of the reason for the discrepancy with Juror Wolford might have better illuminated the matter. It does not appear that either avenue was specifically requested by either side.

7. Insofar as defendant argues the jury selection process directly violated the Sixth Amendment to the United States Constitution and article 1, section 12, of the Utah Constitution, irrespective of its compliance with the statute on selecting jurors, the argument is without merit. Defendant argues that the inclusion of unused jurors from Judge Russon's court denied him his right to a jury consisting of a representative cross-section of the community. *See State v. Tillman,* 750 P.2d 546, 574 (Utah 1987) ("selection of petit juries from a representative cross-section of the community is an essential component of the sixth amendment's right to a jury trial"). The Utah Supreme Court has recognized, however, that "each jury need not 'mirror' the community." *Id.* at 575. Moreover, though defendant is entitled to a fair trial, he is not entitled to a

perfect one. *See McDonough Power Equip., Inc. v. Greenwood,* 464 U.S. 548, 553, 104 S.Ct. 845, 848, 78 L.Ed.2d 663 (1984). In the absence of a more specific showing that the selection procedure used created a non-representative or biased jury, we will affirm. *See Vail v. State,* 599 P.2d 1371, 1378 (Alaska 1979) ("no indication that the group was skewed in such a way as to prejudice either side"); *Wilson v. State,* 737 P.2d 1197, 1202 (Okla.Crim.App.1987) (besides speculation that jurors would be "resentful," appellant failed to show how jury selection substantially prejudiced him).

8. A similar question arose in *United States v. Clawson,* 4 Utah 34, 5 P. 689 (1885), a pre-statehood case involving a polygamy prosecution. The vintage of the case, its concern with an entirely different jury statute, and the unsettled state of Utah's territorial judiciary at the time, *see generally,* C. Ashton, *The Federal Judiciary in Utah* 33–44 (1988), all combine to make reliance on this case questionable. Nonetheless, we note the supportive tenor of this decision, which basically held that locating jurors by other means

However, the Alaska Supreme Court has addressed this issue in *Vail v. State*, 599 P.2d 1371 (Alaska 1979). In *Vail*, the trial court had utilized unused jurors from a panel in another court to complete the jury panel in its court. The Alaska statute, however, directed the court clerk to secure additional jurors for a depleted jury panel by drawing names from the jury box. *Id.* at 1378. Although the court's selection process was not specifically authorized by the statute, the Alaska Supreme Court found substantial compliance with the statute. *Id.* Defendant has not directed our attention to any cases which have found this general practice to constitute a substantial departure from proper jury selection.

We hold that the trial court's decision to utilize unused jurors from other courtrooms did not amount to a substantial departure from § 78–46–13(4). The decision to utilize qualified, unused jurors who had been properly called to serve as jurors on that day was a sound exercise of the court's discretion; advanced the interest of judicial economy; and permitted the trial to proceed as scheduled without unnecessary delay to witnesses and counsel or disruption to the court's calendar. Having concluded the statute was substantially complied with, we need not consider the additional requirement under § 78–46–16(2) that "substantial injustice and prejudice" resulted from the procedure employed by the court.

## JUROR WOLFORD

■ Defendant asserts that he is entitled to a new trial because the trial court abused its discretion when it failed to excuse juror Wolford for cause.[9] It is less than fully clear from the record precisely why the trial court initially declined to excuse juror Wolford for cause. It is clear, however, that the court subsequently considered any error in not dismissing juror

Wolford to have been cured through defense counsel's use of a peremptory challenge to dismiss juror Wolford. The trial court was mistaken in this regard. If the sound exercise of discretion requires that a juror should be excused for cause, a court commits prejudicial error when it forces the party to exercise a peremptory challenge to have that juror removed. *State v. Gotschall*, 782 P.2d 459, 461 (Utah 1989); *State v. Bailey*, 605 P.2d 765, 768 (Utah 1980); *State v. Brooks*, 563 P.2d 799, 802–03 (Utah 1977). Thus, the issue before this court is whether juror Wolford should have been excused for cause by reason of his apparently misrepresenting his pro-police bias on voir dire in this case.

The United States Supreme Court has developed a two-prong test for determining when a juror, challenged for answering falsely on voir dire, should be excused. *See McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556, 104 S.Ct. 845, 850, 78 L.Ed.2d 663 (1984). To obtain a new trial, a defendant "must first demonstrate that a juror failed to answer honestly a material question on *voir dire*, and then further show that a correct response would have provided a valid basis for a challenge for cause." *Id.* Our Supreme Court has recently recognized this two-prong test in *State v. Thomas*, 777 P.2d 445, 451 (Utah 1989). We now examine whether defendant has met this two-prong test.

■ The second prong of the test— whether a basis would have existed for challenging juror Wolford for cause had he answered in a manner consistent with his response to Judge Russon—is readily met. *See, e.g., State v. Hewitt*, 689 P.2d 22, 27 (Utah 1984) (a juror's "strong and deep impressions" concerning the veracity of police officers is a basis for a challenge for cause); *Bailey*, 605 P.2d at 768 (same). The first prong of the *McDonough* test

is appropriate where the jury pool assembled in accordance with the statute has been exhausted. *See Clawson*, 5 P. at 690.

**9.** Defendant has recognized the correct standard of review on appeal. "A motion to dismiss a prospective juror for cause is addressed to the

sound discretion of the trial court. When reviewing such a ruling, we reverse only if the trial court has abused that discretion by committing harmful error." *State v. Gotschall*, 782 P.2d 459, 462 (Utah 1989).

requires closer study. Defendant asserts that juror Wolford failed in the instant case to honestly answer the question concerning his partiality to police officer testimony. His argument is based upon juror Wolford's conflicting voir dire responses in the instant case and Judge Russon's court.

Although the court might have questioned juror Wolford about his conflicting responses or conferred with Judge Russon,[10] it instead passed juror Wolford for cause and required defense counsel to use a peremptory challenge to have him dismissed. On the record before us, however, we must conclude that juror Wolford should have been excused for cause.[11]

The only evidence concerning the falsity of juror Wolford's response, namely the affidavit of attorney Bergeson, establishes that juror Wolford failed to disclose a pronounced bias in favor of police testimony which he had disclosed to another judge only hours before he was asked about the same subject by the court in this case. From all that appears, juror Wolford "had strong and deep impressions with regard to the veracity of police officers' testimony and would credit a police officer's testimony to an undue extent." *Hewitt*, 689 P.2d at 27.

## CONCLUSION

Absent any evidence which would rebut the inference of bias established by the Bergeson affidavit, *see* note 11, *supra*, we must conclude that the trial court abused its discretion in not excusing juror Wolford for cause. Prejudice is shown by the defense's use of a peremptory challenge to exclude juror Wolford from the jury, which challenge should have been available to use against a prospective juror not excusable for cause. The conviction appealed from is reversed and the case remanded for a new trial.

DAVIDSON and BILLINGS, JJ., concur.

---

10. *See* note 6, *supra*.

11. Other explanations may exist for the discrepancy in juror Wolford's voir dire answers besides that he told the truth in Judge Russon's court and lied to the court in this case. He may actually have fabricated in Judge Russon's court to avoid jury service, and then, feeling remorseful about his dereliction in civic duty, answered truthfully in this case. He may have answered truthfully in Judge Russon's court and then, having reflected on the absurdity of that position, undergone an honest change of viewpoint. The affidavit submitted by defense counsel may not have set forth with precision the colloquy in Judge Russon's court. However, these possibilities are only speculative since the trial court failed to "investigate further until the inference of bias was rebutted...." *Bailey*, 605 P.2d at 768.