**STATE of Utah, Plaintiff and Appellee,**

v.

**Paul Edwin WOOLLEY, Defendant and Appellant.**

**No. 900012–CA.**

Court of Appeals of Utah.

April 10, 1991.

Charles F. Loyd, Jr. and Joan C. Watt (argued), Salt Lake Legal Defenders Ass'n, Salt Lake City, for defendant and appellant.

R. Paul Van Dam, State Atty. Gen. and Dan R. Larsen (argued), Asst. Atty. Gen., Governmental Affairs, Salt Lake City, for plaintiff and appellee.

AMENDED OPINION *

Before BENCH, BILLINGS and GREENWOOD, JJ.

BILLINGS, Judge:

Defendant Paul Edwin Woolley appeals from his conviction of two counts of forgery, a third-degree felony, in violation of Utah Code Ann. § 76-6-501 (1989). Defendant claims the trial court committed reversible error by failing either to remove a juror for cause or to ask questions to probe his potential bias when the juror admitted he had been a victim of forgery. We reverse and remand for a new trial.

## FACTS

During voir dire of potential jurors in defendant's trial, the court, at the request of defendant's counsel, asked: "Are there those among you ..., members of the panel, who have yourselves been the victim of a forgery or a crime involving deception or fraud?" Three potential jurors, Mark Hoyt, Chris VanLeeuwen, and James Tyler, responded affirmatively. Hoyt explained that his wallet was taken when he was in California and that his credit card was used. VanLeeuwen related that when he was in Brazil, a thief stole his wallet and wrote about $5,000 worth of checks on his account. Similarly, Tyler explained that some of his checks were stolen in 1961 when he lived in Los Angeles and that someone had forged his signature on some of those checks.

Following these responses, the trial court asked Hoyt, VanLeeuwen, and Tyler, as a group, one general follow-up question:

> Those three of you who have responded, recognizing that this is a different time and place and circumstance, would that experience, having been the victim of that type of a crime, affect your ability to be fair and impartial in this case, that is, would you be unable to set aside that experience and hear the evidence in this case and rule on the evidence based upon what you hear and the credibility of the witnesses? If you would not be able to do so, I want you to raise your hand.

None of those questioned raised his hand.

At the conclusion of voir dire, the trial court requested counsel to pass the jury for cause. The defense refused and requested a sidebar conference. During the conference, defense counsel asked the court to remove Hoyt, Tyler, and VanLeeuwen because of their admissions to having been victims of similar crimes. The trial judge initially struck all three of the challenged jurors for cause.[1] Subsequently,

---

* This opinion replaces the opinion of the same name issued on April 2, 1991.

1. The dissent contends that VanLeeuwen was never stricken for cause at the sidebar conference. The official jury list, however, indicates that all three jurors were initially removed for cause at this conference. On this list, the names of jurors Hoyt, Tyler and VanLeeuwen are crossed out with the notation "for cause" written next to all three names. Subsequently, the notation "foreign country" was included next to juror VanLeeuwen's name, indicating the judge felt that VanLeeuwen should be reinstated because his experience occurred in a foreign country.

The dissent correctly states that since no record was made of the initial conference, "[w]e must rely ... on the subsequent reconstruction of that conference made on the record...." Contrary to the dissent's assertion, however, this reconstruction support's defendant's view. Counsel for defendant reconstructed the conference as follows:

> I believe at the end of voir dire the Court gave me an opportunity to—or the Court asked me if I had any challenges, if I passed

however, the court reinstated juror Van-Leeuwen, explaining its action by stating that VanLeeuwen need not be removed because the forgery occurred in a foreign country. Defense counsel objected to the reinstatement of VanLeeuwen and subsequently removed VanLeeuwen by peremptory challenge.

Defendant was convicted on both counts of forgery and was sentenced to two concurrent terms of zero to five years. Defendant argues on appeal that the court committed reversible error in reinstating Van-Leeuwen.

## REMOVAL OF A JUROR FOR CAUSE

■ A motion to dismiss a prospective juror for cause is within the sound discretion of the trial court. When reviewing such a ruling, we reverse only if the trial court has abused its discretion. *State v. Gotschall,* 782 P.2d 459, 462 (Utah 1989) (citing *State v. Larson,* 775 P.2d 415, 419 (Utah 1989); *State v. Verde,* 770 P.2d 116, 120 (Utah 1989)).[2] The Utah Supreme Court has noted, however, that the exercise of the trial court's discretion in selecting a fair and impartial jury must be viewed "in light of the fact that it is a simple matter to obviate any problem of bias simply by excusing the prospective juror and selecting another." *Jenkins v. Parrish,* 627 P.2d 533, 536 (Utah 1981).[3]

■ The Utah Supreme Court has consistently emphasized that "it is [the trial judge's] duty to see that the constitutional right of an accused to an impartial jury is safeguarded," *State v. Dixon,* 560 P.2d 318, 319–20 (Utah 1977), and has reversed criminal convictions based solely on the appearance that such right may have been jeopardized.[4] Accordingly, trial courts *must* adequately probe a juror's potential bias when that juror's responses or other facts suggest a bias. The court's discretion is properly exercised when deciding whether to dismiss a juror for cause only after this investigation takes place.

■ A party is entitled to use peremptory challenges to remove jurors who are not

the panel for cause, and I said no and approached the bench and I enumerated three individuals who I felt should be challenged for cause. Those individuals were Mr. Mark Hoyt, Mr. Chris VanLeeuwen, and Mr. James Tyler, and I believe at that time the Court did strike the three individuals for cause. The bases were they were victims of a similar crime to Mr. Woolley's, the Defendant in this case.

Shortly thereafter the Court reinstated Mr. VanLeeuwen indicating that because the crime had been perpetrated in a foreign country that that was a significant difference.

Neither the state nor the court objected to this reconstruction in the record below. Furthermore, the state does not assert a contrary view of the events in its brief on appeal.

The dissent correctly notes that subsequently, the court did state that it "determined based on [VanLeeuwen's] responses, not to strike him." This language, however, is taken out of context as it refers not to the court's initial decision to remove VanLeeuwen but only to the court's subsequent final decision to leave VanLeeuwen on the panel.

2. Previously, Utah courts have used different phraseology in defining the discretion afforded a trial judge in dismissing a juror for cause. *See, e.g., Gotschall,* 782 P.2d at 459 (motions to dismiss prospective jurors are within the *sound discretion* of the trial court); *State v. Hewitt,* 689 P.2d 22 (Utah 1984) (in reviewing jury selection,

*some deference* must be accorded the discretion of the trial court); *State v. Lacey,* 665 P.2d 1311 (Utah 1983) (the question of the partiality of prospective jurors remains *largely within the discretion* of the trial court); *Jenkins v. Parrish,* 627 P.2d 533 (Utah 1981) (applying the "some deference" standard); *State v. Dixon,* 560 P.2d 318 (Utah 1977) (matter of possible bias or prejudice of jurors rests within the *sound discretion* of the trial court); *State v. Jonas,* 793 P.2d 902 (Utah Ct.App.), *cert. denied,* 804 P.2d 1232 (Utah 1990) (citing *Gotschall* as the appropriate standard of review); *State v. Suarez,* 793 P.2d 934 (Utah Ct.App.1990) (citing *Gotschall* as the appropriate standard of review). We do not believe, however, the different wording has actually affected the extent of deference afforded on appeal.

3. Although the *Jenkins* court applied a "some deference" standard rather than the "sound discretion" standard, regardless of the standard applied, the judge's exercise of discretion must be viewed in light of this factor.

4. *See, e.g., State v. Cantu,* 778 P.2d 517 (Utah 1989) (holding that defendant was entitled to new trial where prosecutor struck Hispanic juror to get even with defense counsel who had insisted that Hispanics be included on the panel); *State v. Pike,* 712 P.2d 277, 279–81 (Utah 1985) (discussing rationale for presumption of prejudice where improper contact between jurors and witnesses or court personnel occurs).

properly removed for cause. *State v. Brooks*, 631 P.2d 878, 883 (Utah 1981) ("*Brooks II*"); *State v. Brooks*, 563 P.2d 799, 802–03 (Utah 1977) ("*Brooks I*"); *Crawford v. Manning*, 542 P.2d 1091, 1093 (Utah 1975). It is prejudicial error to compel a party to exercise a peremptory challenge to remove a prospective juror who should have been removed for cause. *Gotschall*, 782 P.2d at 461; *State v. Julian*, 771 P.2d 1061, 1064 (Utah 1989).[5]

## A. *Juror Impartiality*

Article I, section 12 of the Utah Constitution and the sixth amendment to the United States Constitution guarantee a criminal defendant the right to a trial by an impartial jury. *See State v. Bishop*, 753 P.2d 439, 448 (Utah 1988). Utah Rule of Criminal Procedure 18(e) implements these constitutional mandates and offers guidance as to when a juror should be removed for cause. This rule provides in relevant part:

> The challenge for cause is an objection to a particular juror and may be taken on one or more of the following grounds:
>
> . . . .
>
> (14) That a state of mind exists on the part of the juror with reference to the cause, or to either party, which will prevent him from acting impartially and without prejudice to the substantial rights of the party challenging. . . .

Utah R.Crim.P. 18(e)(14).

Juror impartiality is a "mental attitude of appropriate indifference." *Bishop*, 753 P.2d at 451 (citing *Brooks I*, 563 P.2d at 801). "Chief Justice Marshall, presiding over the trial of Aaron Burr in 1807, defined an impartial jury as one composed of persons who 'will fairly hear the testimony which may be offered to them, and bring in

their verdict, according to that testimony, and according to the law arising on it.' " *State v. Bailey*, 605 P.2d 765, 767 (Utah 1980) (citations omitted).

■ In assessing whether a juror should be removed for cause, the supreme court has given the following guidance:

> Light impressions which may fairly be supposed to yield to the testimony that may be offered; which may leave the mind open to a fair consideration of that testimony, constitute no sufficient objection to a juror; but ... those strong and deep impressions which will close the mind against the testimony that may be offered in opposition to them; which will combat that testimony and resist its force, do constitute a sufficient objection to him.

*Julian*, 771 P.2d at 1064–65 (citations omitted).

Once a juror's impartiality has been put in doubt, a trial judge must investigate by further questions to determine if the juror has merely "light impressions" or impressions which are "strong and deep" and which will affect the juror's impartiality. "When comments are made which facially question a prospective juror's impartiality or prejudice, an abuse of discretion may occur unless the challenged juror is removed by the court or unless the court or counsel investigates and finds the inference rebutted." *State v. Cobb*, 774 P.2d 1123, 1126 (Utah 1989); *see also Bishop*, 753 P.2d at 451.

The dissent concludes that the mere fact that a juror was the victim of the same crime for which the defendant is on trial does not raise an "inference of bias" but merely a "question of bias." The dissent

---

**5.** The dissent notes that in 1988, the United States Supreme Court held in *Ross v. Oklahoma*, 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988) that as long as the jury which actually sat for the case was impartial, it is unimportant that defendant was forced to use a peremptory challenge to excuse a prospective juror. The dissent then states that if we find that VanLeeuwen should have been removed for cause, we must reevaluate the *Hewitt* line of cases in light of *Ross*.

The Utah Supreme Court was faced with this precise issue in 1989 in *Gotschall* and *Julian* after *Ross* was decided. We assume that the court considered *Ross* when deciding *Gotschall* and *Julian*, but chose to stay with its long-standing rule that "[a] court commits prejudicial error if it forces a party to exercise a peremptory challenge to remove a prospective juror who should have been removed for cause." *Gotschall*, 782 P.2d at 461; *see also Julian*, 771 P.2d at 1064 n. 11. Accordingly, we assume this is still the law in Utah.

claims, therefore, that under these circumstances, a trial judge is not required to probe the juror to determine whether the potential bias is merely a "light impression," thus allowing the juror to remain, or an "impression which is deep and strong," in which case the court should remove the juror for cause.

We find no distinction in Utah case law between a "question of bias" and an "inference of bias." Furthermore, we find no good policy reason not to require probing to clarify any possible prejudice when fundamental rights are at stake. Such narrow line drawing would only cause confusion for trial judges. First, judges would be required to determine if there was a potential for bias. Next, they would have to determine whether it fell into the class of a "question of bias" where minimal investigation was required or an "inference of bias" where more thorough questioning was required. A broader and simpler statement of the rule actually gives trial judges clearer direction and more latitude in ferreting out potential bias.

We agree with the dissent that a trial judge in the first instance conducts voir dire to probe for potential bias. That is what the trial judge did in the instant case when he asked the potential jurors if any of them had been a victim of forgery. This probe did reveal a "question" or an "inference" of bias on the part of three potential jurors. Thus, we believe, contrary to the dissent, that "because the probing revealed a potential for bias," the trial judge was required to address the potential bias "through rehabilitative inquiry" until this "inference" or "question" was rebutted. This is precisely what the trial judge attempted to do.

Additionally, we do not understand what the dissent means by a "per se" inference of bias and reject any such nomenclature. If "per se" as used by the dissent means that a potential juror's prior victimization of the same crime for which the defendant is on trial raises an inference such that the

trial judge must probe the juror to insure that he or she can decide the case impartially despite the past victimization, we do so hold. This rule, however, is not appropriately categorized as a "per se" rule as there is no result which automatically follows. If, however, "per se" as used by the dissent means that a potential juror's prior victimization creates an inference such that the juror's removal is mandated, we clearly reject such a position. We simply find, as did the trial judge, that the responses of the potential jurors that they had been victims of the same crime for which the defendant was being tried were "comments" which raised a facial question as to each prospective juror's impartiality, thus requiring further probing by the trial judge.

The dissent relies heavily on the recent Utah Court of Appeals decision in *State v. Jonas*, 793 P.2d 902 (Utah Ct.App.1990) for the proposition that a prospective juror's prior victimization of the same crime with which the defendant is charged does not raise an inference of bias. We agree that there is some troublesome language in *Jonas* but find its result consistent with our conclusion in the instant case. In *Jonas*, a prospective juror disclosed during voir dire that she had been the victim of theft, the offense with which the defendant had been charged. The *Jonas* trial judge correctly asked the juror no less than ten individual follow-up questions probing her potential bias and her answers dispelled any inference of bias. Against this backdrop, the court of appeals found no reversible error when the trial court refused to remove her for cause.

On appeal, the Utah Court of Appeals did state that the prospective juror's initial comments did not raise an inference of bias such that the juror should have been excused for cause. The court based its conclusion, however, on the juror's responses to the trial court's many questions. We think the *Jonas* analysis confuses the two-part test of *Cobb* [6] and reject it to the

6. This test was summarized in *Cobb* when the Utah Supreme Court stated that "[w]hen comments are made which facially question a pro-

spective juror's impartiality or prejudice, an abuse of discretion may occur unless the challenged juror is removed by the court or unless

extent it holds that being a victim of the same crime with which the defendant is charged does not raise an inference or question of bias such that the court must— just as the *Jonas* court did—investigate further to probe the juror's ability to be fair and impartial.

### B. *Investigation Necessary to Probe Potential Bias*

The level of investigation necessary once voir dire reveals potential juror bias will vary from case to case and is necessarily dependent on the juror's responses to the questions asked. Nevertheless, the exploration should not be merely pro forma.

 When an inference of bias is raised, the inference is generally not rebutted simply by a subsequent general statement by the juror that he or she can be fair and impartial. As the supreme court has stated, "[a] statement made by a juror that she intends to be fair and impartial loses much of its meaning in light of other testimony and facts which suggest a bias." *State v. Hewitt*, 689 P.2d 22, 26 (quoting *Jenkins*, 627 P.2d at 536). Accordingly, "[t]he court, not the juror, must determine a juror's qualifications." *State v. Jones*, 734 P.2d 473, 475 (Utah 1987) (quoting *Brooks II*, 631 P.2d at 884).

Utah case law is helpful in determining the depth of inquiry which has been sufficient to clarify potential juror bias. In *Bailey*, 605 P.2d at 771, the defendant was charged with distribution of a controlled substance. At trial, the only witness to testify was the undercover police officer who made the arrest. During voir dire of the jury panel, prospective jurors were asked if they would be inclined to give the testimony of a police officer greater weight than that of a witness who was not a police officer. A prospective juror stated, "you can rely upon their testimony and their background to the utmost.... I would want to stand behind them a hundred percent." *Id.* at 768. In response to this facial comment of bias, the trial court responded by asking only one question as to the juror's expressed bias. Being satisfied

that the juror could act impartially, the court did not remove the juror for cause. *Id.* Ultimately, the defendant was convicted and appealed. The supreme court reversed and remanded, noting that the trial court's minimal investigation and questioning was insufficient to rebut the inference of bias. The court stated that "[t]he [trial] Court's one question was not sufficient to rebut this inference," adding that "the Court had insufficient evidence on which to base a conclusion that there was no bias...." *Id.*

In *Jonas*, 793 P.2d at 902, the trial judge asked eleven different questions in establishing the impartiality of a prospective juror who had been the victim of a theft, the crime with which the defendant was charged. Similarly, in *Salt Lake City v. Tuero*, 745 P.2d 1281 (Utah Ct.App.1987), the trial court made "significant efforts" to determine if a potential juror in a case involving driving under the influence of alcohol could remain unbiased given the fact that his wife had been "broadsided by a drunk driver." *Id.* at 1282.

The depth of questioning necessary is further illustrated by a case very similar to the instant case; *Brooks II*, 631 P.2d at 878. *Brooks II* involved a defendant charged with burglary for unlawfully entering a basement apartment with the intent to commit theft. During voir dire of the jury venire, two prospective jurors stated that they had been victims of the same or similar crimes. One juror responded that his home had been burglarized twice. The other juror noted that she had been the victim of an armed robbery and assault in her home. Because of the possible biases created by this prior victimization, the court asked multiple questions of these two jurors. Both jurors indicated that they had strong feelings about their experiences but felt that they could render a fair and impartial verdict based on the evidence. Both jurors, therefore, were retained.

On appeal, the supreme court held that the jurors had not been rehabilitated by the court's questioning and should have been

the court or counsel investigates and finds the

inference rebutted." *Cobb*, 774 P.2d at 1126.

excused for cause. *See id.; see also Gotschall,* 782 P.2d at 459 (A prospective juror made statements that evidenced a lack of understanding of the prosecution's burden of proof and the defendant's right not to take the stand. The trial judge asked the juror fourteen questions before determining that he need not be excused for cause. The supreme court affirmed.); *Cobb,* 774 P.2d at 1123 (A prospective juror in a second-degree murder trial expressed strong feelings against the taking of human life. This juror was asked eleven questions before the court determined that he could serve impartially. The supreme court affirmed.);[7] *Julian,* 771 P.2d at 1061 (Prospective juror in a trial involving charges of sodomy on a child made comments which facially indicated she was predisposed to believe the victims' testimony and was thus incapable of rendering an impartial verdict. This juror was asked twenty separate questions before the trial court decided she could act impartially. On appeal, the supreme court held that the juror had been rehabilitated.); *Tuero,* 745 P.2d at 1283 (The wife of a prospective juror in a case involving driving under the influence of alcohol had been "broadsided by a drunk driver." The court made "significant efforts" to determine that this juror could remain unbiased. The court of appeals affirmed.); *Layton City v. Bennett,* 741 P.2d 965, 967 (Utah Ct.App.) (The defendant in a trial involving driving under the influence of alcohol believed that two prospective jurors were partial. One juror was associated with Mothers Against Drunk Drivers; the other juror was a reserve police officer in an adjoining city. Before these jurors were impaneled, they gave "substantial assurances," by way of responses to "specific, detailed questioning" by the court, that they could be fair and impartial. The court

of appeals affirmed.), *cert. denied,* 765 P.2d 1277 (1987).

The dissent contends that the instant case is analogous to *Hornsby v. Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter–Day Saints,* 758 P.2d 929 (Utah Ct.App.1988), claiming this court in that case held that one general question to prospective jurors was sufficient to detect any bias which would warrant removal for cause. *See id.* at 932. We disagree. *Hornsby* did not focus on the issue of removal of a juror for cause.

In *Hornsby,* the plaintiff was seeking recovery from the Church of Jesus Christ of Latter–Day Saints ("L.D.S. Church") for injuries sustained by the plaintiff when he swerved his motorcycle to avoid colliding with a church-owned cow on a public highway. At the time of voir dire, plaintiff proposed several questions to the trial court regarding the affiliation of the prospective jurors with the L.D.S. Church. The trial court rejected these questions, stating that the religious preferences of the jurors were none of the court's business. Instead, the court asked one general question:

> Are there any of you who feel that you would have trouble being an impartial juror because of feelings you may have either pro or con with regard to the L.D.S. Church that you think might affect your ability to be a fair and impartial juror in this case? If so, I'd like you to raise your hand.

*Id.* at 931–32.

Hornsby objected to the trial court's action and subsequently filed an appeal, claiming that the trial court erred in limiting voir dire regarding the panel's religious

---

7. The dissent cites *Cobb,* 774 P.2d at 1123, as a case in which the circumstances are "similar" to those of the instant case. The juror in *Cobb* referred to by the dissent disclosed during voir dire that she had known the prosecutor 15 years earlier when he was a senior in high school. In comparing *Cobb* to the instant case, however, the dissent fails to acknowledge several important distinguishing facts. First, unlike our case, the juror was individually questioned and asked to explain the relationship and whether it would

affect her impartiality. Furthermore, the use of the language that the relationship "was not that which would warrant an inference of bias" is taken out of context as it comes in light of her answers to the questions probing her potential bias. Additionally, the *Cobb* court did not engage in the extraordinary practice of initially dismissing a juror for cause and then inexplicably reinstating him as did the trial court in the instant case.

affiliations. Accordingly, the issue on appeal, as clearly stated by this court, was whether the trial court erred in refusing to voir dire members of the jury panel concerning their affiliation with the L.D.S. Church such that the defendant could knowingly exercise his *peremptory* challenges. We found the court had erred by limiting voir dire.

The dissent refers to a small portion of dicta in *Hornsby* which can be misleading when taken out of context: "[t]he question asked by the trial court was sufficient to detect any actual subjective bias to warrant a challenge for cause...." *Id.* at 932. The dissent, however, fails to mention the following sentence: "[b]ecause it is not necessary to this appeal, we do not decide whether the voir dire was sufficient to reveal circumstances of relationships that would warrant challenges for cause...." *Id.*

Read in its full context, we believe that *Hornsby* supports our holding today. The trial judge in *Hornsby* asked one general question to the jury panel regarding whether the juror's affiliation with the L.D.S. Church would affect the juror's ability to be fair and impartial. This question was designed to detect any potential bias which would require further probing. Similarly, the trial judge in the instant case asked the jurors' if any of them had been the victim of a crime similar to that with which the defendant was charged. In *Hornsby*, no juror responded positively and, therefore, there was no need to probe further to investigate this potential bias. In the instant case, however, three jurors did respond affirmatively. The fact that the *Hornsby* court was not required to probe further when no potential bias was detected does not relieve the trial court in the instant case of its duty to probe further when potential bias was detected.

■ We now turn to the sufficiency of the trial court's questioning in the instant case. Attempting to rebut the potential bias created when three jurors admitted to being victims of the same crime for which the defendant was on trial, the trial judge simply asked:

> Those three of you who have responded, recognizing that this is a different time and place and circumstance, would that experience, having been the victim of that type of a crime, affect your ability to be fair and impartial in this case, that is, would you be unable to set aside that experience and hear the evidence in this case and rule on the evidence based upon what you hear and the credibility of the witnesses? If you would not be able to do so, I want you to raise your hand.

None of the jurors raised his hand, nor were any allowed to make a verbal response. We are concerned that the one general question was not sufficient to rebut the potential bias raised by juror VanLeeuwen's comment regarding his prior victimization in light of the fact that the court posed this question only to the group of prospective jurors who had been victims of similar crimes without probing each individual juror separately to determine the effect of the experience on the particular juror. There was never a personalized dialogue which would have given VanLeeuwen a chance to express his latent feelings.

Our concern about juror VanLeeuwen is further compounded by the fact that the trial judge initially agreed to remove all three prospective jurors based upon their identical passive responses on the grounds that they had been victims of the same crime and, therefore, could not be impartial. Once a trial judge has found that a juror should be removed for cause, it is highly unusual for this juror to be reinstated without further voir dire to develop new facts to support the change of direction.[8]

The trial judge subsequently reinstated VanLeeuwen on the panel, explaining his extraordinary action by stating that VanLeeuwen's experience had occurred in a foreign country and, therefore, would not affect his impartiality. The dissent relies on the second finding of the trial judge that

---

**8.** The initial removal of the three challenged jurors and subsequent reinstatement of juror VanLeeuwen took place during a sidebar conference outside the presence of the court reporter. Consequently, no record of this conference was made.

VanLeeuwen could serve impartially. We are unpersuaded. The trial judge's conclusion came immediately after he had removed VanLeeuwen for cause, presumably because VanLeeuwen could not be fair and impartial. Subsequent to VanLeeuwen's removal, the trial judge received no new information on which to logically base his conclusion that VanLeeuwen could act as a fair and impartial juror and thus should be reinstated.

Additionally, there is no logical basis for assuming that a victim of an identical crime in a foreign country will be less biased. In actuality, based on the meager information gathered by the trial court, VanLeeuwen was objectively the most likely of the three previously victimized jurors to be biased. Juror Hoyt was the victim of theft and use of his credit card, not forgery. Additionally, although juror Tyler was the victim of an identical crime, that experience occurred thirty years ago in 1961. The remoteness of the incident suggests less possibility of current bias. In contrast, VanLeeuwen was the victim of a recent identical crime involving a substantial dollar amount.

Based upon the totality of the circumstances involved in this voir dire, we cannot say the record supports a finding that VanLeeuwen was a fair and impartial prospective juror. Contrary to the statement of the dissent, we do not reverse this case based solely on the fact that only one question was asked by the trial judge.[9] Our reversal is based on the totality of the circumstances surrounding voir dire. We are troubled that the three jurors were not questioned individually and each allowed to respond verbally. Additionally, VanLeeuwen's reinstatement was the product of an irregular procedure in that the trial judge originally removed VanLeeuwen for cause and then without further fact-gathering reversed his decision. Furthermore, we find no persuasive distinction between VanLeeuwen and the other two prospective jurors who had also been victims of similar crimes and who the trial judge presumably found could not be fair and impartial as he removed them for cause. We therefore reverse and remand for a new trial.

GREENWOOD, J., concurs.

BENCH, Judge (dissenting):

The majority concludes that the trial court abused its discretion because it did not make adequate inquiry. Either the majority is requiring rehabilitative-like inquiry in all cases where there is only a question of potential bias, or it is holding for the first time that there is a per se inference of bias that must be rebutted whenever a prospective juror has previously been a victim of a similar crime. Both approaches are a departure from our established case law. I believe the trial court conducted adequate inquiry once the question of potential bias arose because there was no inference of bias or actual bias evidenced by prospective juror VanLeeuwen's comments. Further, I believe that the defendant waived any objection to the extent or manner of voir dire conducted and has therefore not preserved that issue for appeal; alternatively, defendant has not satisfied his burden on appeal to demonstrate that VanLeeuwen could not have been impartial.

## DEGREES OF "BIAS"

There are three degrees of "bias" that may surface during voir dire: a question of potential bias, an inference of bias, and actual bias. The extent of inquiry to be conducted by a trial court depends on which degree of bias surfaces. If a prospective juror has previously been the victim of a similar crime, there is a legitimate *question* as to whether that experience has caused the prospective juror to become biased. When such a question arises, the trial court must probe to determine whether the prospective juror is, in fact, impartial in spite of the past experience. Typically

**9.** The dissent faults defense counsel for not asking for further questions to probe the potential bias of the three jurors, claiming that this failure constituted a waiver of defendant's right to complain on appeal. This criticism ignores the fact that after the judge's questioning, counsel moved to remove all three jurors for cause. This motion was granted and, therefore, there was no logical reason for counsel to encourage the court to probe further at that time.

this is accomplished by the trial court simply asking if the juror can be impartial. *See, e.g., State v. Jonas,* 793 P.2d 902 (Utah Ct.App.) *cert. denied,* 804 P.2d 1232 (Utah 1990); *Hornsby v. Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-day Saints,* 758 P.2d 929, 932 (Utah Ct.App.1988). If after probing the prospective juror's state of mind the trial court is satisfied that the prospective juror is nevertheless impartial, that is the end of the inquiry.

If, on the other hand, the prospective juror, in response to such probing, makes *comments* that "facially question a prospective juror's partiality or prejudice," the court will infer bias as a matter of law. *State v. Cobb,* 774 P.2d 1123, 1126–28 (Utah 1989). Once an inference of bias occurs because of comments made by the prospective juror, the trial court must either remove the prospective juror or rebut the inference with further inquiry. *Id.* at 1126. *See, e.g., State v. Bailey,* 605 P.2d 765, 768 (Utah 1980) (trial court failed to remove or inquire further of prospective juror who stated that he would give greater weight to testimony of peace officer). An inference of bias is rebutted when the rehabilitative inquiry shows that a prospective juror is "willing to keep an open mind and apply the law as the court instruct[s]." *Cobb,* 774 P.2d at 1127.

Questions of bias and inferences of bias are not to be confused with actual bias as evidenced by a prospective juror's "attitude of bias" or "strong feelings" that indicate the prospective juror has a closed mind. Once such strong feelings are revealed, a prospective juror may not sit, even if the prospective juror later asserts that he or she can render an impartial verdict. *State v. Jones,* 734 P.2d 473, 475 (Utah 1987) (prospective jurors knew the murder victim's family and expressed strong feelings of bias); *State v. Brooks,* 631 P.2d 878, 884 (Utah 1981) (prior victims of crime expressed strong feelings of anger and frustration about their victimization); *State v. Hewitt,* 689 P.2d 22, 26–27 (Utah 1989) (prospective juror had strong and deep impressions and would not indicate that he could be impartial). Obviously, if a pro-

spective juror's comments indicate that he or she has a closed mind then he or she must be removed for cause and no amount of inquiry will be sufficient to rehabilitate. *Jones,* 734 P.2d at 475. Although no claim is made that VanLeeuwen was in fact biased, the majority nevertheless erroneously seeks to apply the actual bias analysis to the present case.

The majority opinion falters because it fails to recognize the differences between a "question of potential bias" that arises because of a fact situation, an "inference of bias" that arises because of a prospective juror's comments, and "actual bias" that arises when a juror reveals strong and deep impressions of bias. A prospective juror who is found to be impartial following the general probing that occurs when a question of potential bias arises clearly does not need to go through rehabilitative inquiry in order to ensure that he or she will act impartially.

The fact that a prospective juror was previously a victim of a similar crime raises a *question* about potential bias which requires general probing into the prospective juror's state of mind in light of that experience. However, unless the prospective juror makes comments that facially bring into question his or her impartiality, there is no *inference* of bias raised, *see, e.g., Hewitt,* 689 P.2d at 25–26, nor is there actual bias shown, *see, e.g., Jones,* 734 P.2d at 475. The trial court must find any inference of bias, or determine that actual bias exists, "based upon the juror's *expressed* feelings, attitudes, and opinions." *Brooks,* 631 P.2d at 884 (emphasis added). Because the trial court did not find an inference of bias in this case, there was obviously no need for it to conduct further inquiry to rebut such an inference.

In *State v. Cobb,* 774 P.2d at 1126, a prospective juror indicated that she was acquainted with the prosecutor. The revelation of this fact raised a question of potential bias that required additional probing. The probing revealed that she had known him fifteen years earlier when he was a senior in high school. He had been friends with her daughter and the two families had belonged to the same church group. When asked if her association with

the prosecutor would have caused her to be swayed to his side, she responded that it would not. The supreme court held that the trial court did not err in refusing to dismiss the prospective juror for cause because the prospective juror's answers revealed that her acquaintance with the prosecutor "was not the type of relationship that would warrant an *inference of bias.*" *Id.* (emphasis added).

In the present case, the trial court asked the prospective jurors to raise a hand if they could not try the case based only on the evidence they heard. No hands were raised. The trial court also asked the panel members to raise a hand if there were any reasons they could not be impartial in deciding defendant's guilt or innocence. None of the jurors did. The trial court then questioned whether the jurors, if placed in the position of either the defendant or the State, would be satisfied by being tried by a juror of the panel member's frame of mind or attitude toward the case. Once again, none of the jurors gave any response indicating potential bias.

After the trial court had concluded its own voir dire, it invited counsel to ask their own questions, directed through the court. Defense counsel requested that the prospective jurors be asked if they had ever been victims of crimes similar to that of which the defendant was accused. Three answered in the affirmative. The experiences of each prospective juror were brief-ly related. The trial court then asked all three prior victims whether they could set aside their prior experiences and act in a fair and impartial manner.

Those three of you who have responded, recognizing that this is a different time and place and circumstance, would that experience, having been the victim of that type of a crime, *affect your ability to be fair and impartial in this case,* that is, would you be unable to set aside that experience and hear the evidence in this case and rule on the evidence based upon what you hear and the credibility of the witnesses? If you would not be able to do so, I want you to raise your hand. (Emphasis added.)

None of those questioned raised a hand.

The only fault the majority finds in this case is that the trial court did not ask enough questions before concluding that VanLeeuwen was impartial.[1] Once the trial court is satisfied that a prospective juror is impartial, however, there is no reason for it to continue with unnecessary questioning. The scope of the inquiry is left to the sound discretion of the trial court because only the trial court knows when it is satisfied that the prospective jurors are impartial. *See Hornsby,* 758 P.2d at 932. *See also State v. Gotshall,* 782 P.2d 459, 462 (Utah 1989); *Jonas,* 793 P.2d at 906.[2] The determination of whether or not a prospective juror is impartial is a factual determination made from the "advantaged posi-

---

1. The majority claims that the record does not support a finding that VanLeeuwen was a fair and impartial juror. The burden of challenging this factual finding, however, has not been met by defendant. "In the absence of a record or transcript supporting defendant's factual contentions on appeal, and upon defendant's failure to marshal evidence that shows the ruling to be clearly erroneous, we presume that the ruling is adequately supported by the clear weight of the evidence." *State v. Christofferson,* 793 P.2d 944, 947 (Utah Ct.App.1990) (citations omitted).

 Even if the defendant were to marshal the evidence in support of the trial court's finding—which includes the four affirmative, unequivocal responses by VanLeeuwen that he could be impartial—there is no evidence of bias on the record to show that the trial court's finding was clearly erroneous. The majority is therefore left to attack the procedure used by the trial court in order to show any abuse of discretion. In addition to its concerns about the extent of the inquiry, the majority indicates that it is bothered by the fact there was no individualized questioning of the three prospective jurors, but it offers no precedent or analysis to support its assertion that individualized questioning is required. In the past, this court has accepted collective questioning without comment. *See, e.g., Hornsby,* 758 P.2d at 931.

2. Contrary to the majority's assertion in its second footnote, there is a real distinction between the phraseology used in expressing the appropriate standard of review. If a matter is within the "sound discretion" of a trial court, then the appellate courts will give maximum deference to the trial court's determination. The granting of only "some deference" is obviously a more searching review. The majority claims to be giving maximum deference when in fact it is granting only "some deference," if that much, to the trial court's determination of the appropriate scope of voir dire. Inasmuch as *Gotschall* is

tion" of the trial court to determine "which persons would be fair and impartial jurors." *Jenkins v. Parrish,* 627 P.2d 533, 536 (Utah 1981). The majority therefore faults the procedure used by the trial court in reaching its factual finding. I, on the other hand, believe the inquiry was procedurally sufficient.

The single question asked by the trial court once it had heard the experiences of the three prior victims is similar to that asked in *Hornsby,* 758 P.2d at 931–932, wherein the trial court inquired:

> Are there any of you who feel that you would have trouble being an impartial juror because of feelings you may have either pro or con with regard to the L.D.S. Church that you think might *affect your ability to be a fair and impartial juror in this case?* If so, I'd like you to raise your hand.

*Id.* at 931 (emphasis added).

As in the present case, none of the prospective jurors raised a hand. We recognized in *Hornsby* that one of the purposes of voir dire is the "detection of bias sufficient to challenge for cause." *Id.* at 932. We then held that "the question asked by the trial court was sufficient to detect *any actual subjective bias to warrant a challenge for cause* under subsection (6) [of Rule 47(f), Utah R.Civ.P.]." *Id.* (emphasis added).[3] The majority asserts that one question was not sufficient and relies upon *Bailey,* 605 P.2d at 768 and *Brooks,* 631 P.2d at 884. *Bailey* and *Brooks,* however, apply only when there is a *strong inference of bias,* and that is not the case before us.

The question asked in the present case cannot be distinguished from that asked in *Hornsby.* The majority fails to show any defect at all in the question asked.[4] Nor does it put forth any additional questions that should have been asked.[5] Instead, it relies only upon the total number of questions asked in the cases that it cites as support without any analysis of the sub-

the most recent Utah Supreme Court case, I believe that the "sound discretion" standard enunciated therein governs our review in this case and that the majority's departure therefrom is error.

3. The majority erroneously describes this statement as dicta. At issue in *Hornsby* was whether the voir dire was sufficient with regards to the prospective jurors' feelings toward the L.D.S. Church. Voir dire has two functions, "the detection of bias sufficient to challenge for cause," and "the collection of data to permit informed exercise of the peremptory challenge." *State v. Taylor,* 664 P.2d 439, 447 (Utah 1983). In *Hornsby,* we first reviewed the detection of bias issue and found that the single question was sufficient to detect bias for purposes of subsection (6) of Rule 47(f). We did not consider "whether the voir dire was sufficient to reveal circumstances or relationships that would warrant challenges for cause *under other subsections of Rule 47(f),*" because that issue was not necessary to the appeal. *Hornsby,* 758 P.2d at 932 (emphasis added). Instead, we reversed the case because the voir dire was insufficient to permit the plaintiff an opportunity to collect data for the informed use of the peremptory challenge. The majority's partial quote is therefore misleading because it implies that we did not make any decision relating to challenges for cause, when in fact we expressly made such a ruling under subsection (6).

4. The majority attempts to distinguish *Hornsby* by pointing out that there were no affirmative

responses to the general question asked in *Hornsby* while there were positive responses in the present case. The majority's analysis, however, ignores the fact that the ultimate issue of impartiality addressed by one question in *Hornsby* was addressed by two questions in this case. The *Hornsby* court asked if the prospective jurors had any feelings toward the L.D.S. Church that would prevent them from being impartial. If the *Hornsby* court had broken this question into two parts and first asked, "does any prospective juror have feelings towards the L.D.S. Church," it probably would have received affirmative responses. Conversely, had the trial court in the present case asked the single question, "have any of you been the victim of a similar crime *that would prevent you from being impartial,*" it would not have received any affirmative responses. The intermediate positive response, that the majority claims distinguishes this case from *Hornsby,* simply is not determinative because the ultimate response was the same—the prospective jurors would be impartial.

5. The trial court had already asked three different questions designed to elicit any bias before the issue of prior victimization even arose in this case. Inasmuch as we must look at the "totality" of the voir dire in order to determine whether a trial court has abused its discretion, *State v. Bishop,* 753 P.2d 439, 448 (Utah 1988), the majority errs in not considering the impact of these previous questions as well. When the totality of the voir dire is considered, it is clear

stance of those questions.[6] An examination of many of those cases reveals that the higher number of questions resulted not from rehabilitative questioning, but from the prospective jurors giving equivocal answers when asked if they could be impartial.[7]

In the present case, the prospective jurors' answers were unequivocal and therefore did not require any additional inquiry. Absent some explanation as to why the inquiry conducted by the trial court was insufficient, we may not say that the trial court abused its discretion in not inquiring further. We certainly may not declare the trial court's finding to be clearly erroneous simply because it did not first ask a magical number of questions.

that the three questions initially asked by the trial court, plus the question following the discovery of the prior victimization, were "sufficient to detect any actual subjective bias to warrant a challenge for cause." *Hornsby,* 758 P.2d at 932.

**6.** In general, the types of questions fall into three groups: (1) factual questions regarding the prospective juror's experiences; (2) questions probing the prospective juror's self-perceived state of mind and whether those experiences would affect his or her ability to act impartially; and (3) questions rebutting inferences of bias by inquiring whether the prospective juror understands his or her role and is willing to be impartial. The majority fails to consider whether the questions asked in the cases cited are factual, probing, or rehabilitative. Absent such analysis, the cases cited are useless in determining whether the trial court abused its discretion in the present case.

**7.** The following voir dire colloquy between the trial court and a prospective juror in *Jonas* is a prime example of extended inquiry due to equivocal answers.

> THE COURT: All right. I almost hate to ask this question, but I'm obligated to. Have any of you been the victims of a theft? And that, as I've indicated to you before what a theft really is, taking property of another with intent to permanently deprive them, or in receiving. Well, we'll take that first. I saw some hands go up in the jury box....
> PROSPECTIVE JUROR D. SMITH: Yes, my husband had about $13,000 worth of tools stolen about a year and a half ago which we have never—
> THE COURT: Did a criminal act result from that—or action?
> PROSPECTIVE JUROR D. SMITH: No, it was reported to the police, which they didn't do

Another distinction that should be drawn between the present case and the cases relied upon by the majority is that in many of those cases counsel, not the trial court, conducted the extended inquiry. *See, e.g., State v. Julian,* 771 P.2d 1061, 1065–66 (Utah 1989) (defense counsel asked the twenty questions referred to by the majority, not the trial court). Rule 18(b) of the Rules of Criminal Procedure provides counsel an opportunity to ask additional questions with leave of the trial court. Defense counsel in the present case requested the question regarding prior victimization, but did not request any additional probing once the victimization question and the trial court's follow-up question regarding impartiality were asked. Defendant's failure to

> anything about, and we still have never gotten—
> THE COURT: They didn't find it?
> PROSPECTIVE JUROR D. SMITH: (shook head from side to side)
> THE COURT: How long ago was that?
> PROSPECTIVE JUROR D. SMITH: About a year and a half ago.
> THE COURT: Keeping that incident in mind, as I indicated, there are different parties involved, but sometimes based on our experience we allow that to interfere with our thinking.
> PROSPECTIVE JUROR D. SMITH: It might be. If it was tools, I might be a little influenced.
> THE COURT: Well, wait just a minute. Let me ask the questions and you just answer the question.
> PROSPECTIVE JUROR D. SMITH: All right.
> THE COURT: Bearing that in mind, do you believe that that incident would make it difficult for you to be fair and impartial, particularly to this Defendant, as well as the people of the state of Utah?
> PROSPECTIVE JUROR D. SMITH: It's a little hard to say.
> THE COURT: Well, you just take time to think it over because we—you're the one that—
> PROSPECTIVE JUROR D. SMITH: It probably would, yes.
> THE COURT: Let's see. You're Mrs.—
> PROSPECTIVE JUROR D. SMITH: Smith, Donna Smith.
> THE COURT: You don't believe that you could set those facts aside and make a determination on the evidence that's presented in this case?
> PROSPECTIVE JUROR D. SMITH: I—well, yes, I believe I could be impartial.
> *Jonas,* 793 P.2d at 905–06.

object to the extent of the voir dire conducted by the trial court "constitutes a waiver and bars inquiry into the bias question." *State v. DeMille,* 756 P.2d 81, 83 (Utah 1988) (defendant's evidence of juror bias discovered post-trial was properly refused by trial court in motion for new trial when "quite foreseeable" issue of potential bias was not raised by defendant during voir dire). *See also State v. Miller,* 674 P.2d 130, 131 (Utah 1983) (trial court failed to inquire of jurors whether there would be prejudice in their minds because the case involved a motorcycle club; defense counsel's failure to object, to remind the judge of the oversight, to make a new request, or to ask personally to voir dire the jury, effectively waived the error). Defendant has therefore not preserved the issue for appeal.[8] *See Doe v. Hafen,* 772 P.2d 456, 458 (Utah Ct.App.1989) (plaintiff waived any objection at trial when it did not attempt to call the court's attention to a specific question it desired the court to ask on voir dire and thereby did not preserve the issue for appeal).

Even if defendant had preserved the issue for appeal, he failed to meet his burden of proof on appeal. "Defendant did not demonstrate on the trial record, or on appeal, that [the prospective juror] could not act in a fair and impartial manner." *Lay-*

ton City v. Bennett, 741 P.2d 965, 967 (Utah Ct.App.1987) (citing *Brooks,* 631 P.2d at 884). *See also Ross v. Oklahoma,* 487 U.S. 81, 108 S.Ct. 2273, 2277, 101 L.Ed.2d 80 (1988) (defendant "failed to establish that the jury was not impartial"). Nor has defendant demonstrated that he was not "afforded an adequate opportunity to gain the information necessary to evaluate" VanLeeuwen. *Hornsby,* 758 P.2d at 932. "The trial court abuses its discretion when, 'considering the totality of the questioning, counsel [is not] afforded an adequate opportunity to gain the information necessary to evaluate jurors.'" *Id.* (quoting *Bishop,* 753 P.2d at 448). Defendant has simply failed to show how VanLeeuwen was partial, or how he was prevented in any way from gaining sufficient information about VanLeeuwen to know whether he was partial.

The majority cannot say that the trial court did not conduct adequate inquiry simply because it might have conducted more. Once the trial court was satisfied that the prospective jurors were impartial, it did not need to probe any further. If defense counsel was not satisfied that the prior victims were impartial, then it should have requested additional probing.[9] The trial court therefore did not abuse its discretion in asking only one question when the ques-

8. Contrary to the majority's assertion that the motion to strike was granted as to all three prior victims, and therefore defense counsel did not need to ask for further probing to preserve the issue, the record reveals that Hoyt and Tyler were removed, but that VanLeeuwen was never removed.

No record was made of the actual sidebar conference at which time defendant claims VanLeeuwen was removed and reinstated, but the conference was later reconstructed on the record. We must therefore rely upon the subsequent reconstruction of that conference made on the record. *State v. Suarez,* 793 P.2d 934, 936 n. 5 (Utah Ct.App.1990). Defense counsel rehearsed how it had made a motion to remove Hoyt, Tyler and VanLeeuwen and then stated: "I believe at that·time the Court did strike the three individuals for cause.... Shortly thereafter the Court reinstated Mr. VanLeeuwen...." The trial court stated that it was the court's view at the sidebar conference that all three prospective jurors could be fair and impartial and that the state's objection to striking VanLeeuwen was particularly well taken because his experi-

ence occurred in a foreign country. The trial court then indicated that at sidebar it "determined based on his responses *not to strike him.*" (Emphasis added). Defense counsel did not make any protest to the trial court's assertion that it did not strike VanLeeuwen.

Defense counsel's statement that VanLeeuwen was stricken and later reinstated is without any support in the transcript and is directly contrary to the trial court's express declaration that it did not strike VanLeeuwen. Defense counsel therefore did not preserve the issues of insufficient inquiry or the alleged irregular "reinstatement" of VanLeeuwen. See *id.* The only issue properly preserved for appeal is the question of whether VanLeeuwen should have been dismissed for cause *based on the answers given.*

9. Had defendant so requested, additional questions could have been posed to the three prospective jurors after defendant made its request to strike for cause and before the trial court ruled on the motion. *See, e.g., Gotschall,* 782 P.2d at 461; *Salt Lake City v. Tuero,* 745 P.2d 1281, 1283 (Utah Ct.App.1987).

454

tion asked was "sufficient to detect *any actual subjective bias to warrant a challenge for cause.*" *Hornsby*, 758 P.2d at 932 (emphasis added).

### PER SE INFERENCE OF BIAS

Since VanLeeuwen made no comments to call into question his impartiality, no inference of bias was raised under our traditional analysis. Bias is only inferred when the *"comments"* of the prospective juror raise a facial question as to the prospective juror's partiality. *Cobb*, 774 P.2d at 1126 (emphasis added). *Accord Hewitt*, 689 P.2d at 25–26 (fact that prospective juror had prior involvement in drug abuse and distribution investigations did not create an inference of bias where no comments were made to call into question his impartiality).[10] The majority's ruling expressly requires trial courts to rebut an inference of bias *whenever* the court learns of prior victimization. The majority's ruling therefore creates a per se inference of bias that attaches automatically whenever a prospective juror is a prior victim of a similar crime. The majority fails to provide any legal or public policy support for such a ruling. The majority's approach, in fact, is contrary to our case law.[11]

A recent decision from this court indicates that prior victimization of a similar crime does not, per se, raise an inference of bias. In *State v. Jonas*, 793 P.2d 902 (Utah Ct.App.) *cert. denied*, 804 P.2d 1232 (Utah 1990), a prospective juror revealed during voir dire that she had recently been the victim of a theft involving approximately $13,000 worth of tools. When asked whether the previous theft would affect her impartiality, the prospective juror answered, "If it was tools, I might be a little influenced." *Id.* at 906. She equivocated further by admitting that it was "a little hard to say" whether the prior incident would affect her ability to be impartial, but eventually affirmed her ability to remain impartial upon further questioning by the trial court. *Id.* This court held that no inference of bias was demonstrated by the voir dire questioning because, although the prospective juror expressed some equivocation, she ultimately manifested her ability to be impartial. *Id.* at 907. This court reasoned that since the case did not involve tools, "it could be inferred that the prior experience would not influence her at all." *Id.* Such reasoning reveals that prior victimization does not automatically raise a per se inference of bias that must be rebutted. *See State v. Rose*, 121 Ariz. 131, 589 P.2d 5, 13–14 (1978); *State v. Singletary*, 80 N.J. 55, 402 A.2d 203, 207 (1979).

The majority summarily assumes, however, as a matter of law and in a technical fashion, that all prior victims are not indifferent to the case before them. " 'Impartiality' is not a technical conception but is a state of mind; it is a mental attitude of appropriate indifference." *State v. Brooks*, 563 P.2d 799, 801 (Utah 1977). If the prior victimization of the prospective

10. The majority misconstrues "comments" as meaning VanLeeuwen's statement that he was a prior victim. Such an interpretation is clearly not consistent with the analysis of *Brooks*. "Whenever the voir dire evokes *a strong emotional response*, there is posed a warning that the juror may not have the appropriate indifference to the party or cause before the court." *Brooks*, 631 P.2d at 884 (emphasis added). Van-Leeuwen's response in this case obviously was not a "strong emotional response."

The majority also misconstrues the language of *Cobb* by asserting that the inference that arises from prior victimization must be rebutted, but that the prospective juror need not necessarily be removed. Such an approach is a clear departure from *Cobb*, which requires the prospective juror to be removed if an inference of bias is not rebutted. *Cobb*, 774 P.2d at 1126.

11. The majority's approach is also contrary to our established rules of procedure. Fact situations that raise a concern serious enough to create a per se inference of bias are enumerated in rule 18(e) of the Utah Rules of Criminal Procedure. Prior victimization is not one of those per se grounds. Rule 18(e)(4), for example, provides that the following fact situations automatically constitute grounds for removing a prospective juror:

the existence of any social, legal, business, fiduciary or other relationship between the prospective juror and any party, witness or person alleged to have been victimized or injured by the defendant, which relationship when viewed objectively, would suggest to reasonable minds that the prospective juror would be unable or unwilling to return a verdict which would be free of favoritism.

juror in *Jonas* did not prevent her from being indifferent, then there is no reason to assume that VanLeeuwen's prior victimization prevented him from being indifferent. In general, prospective jurors who affirm their impartiality are presumed to be impartial unless proven otherwise. *See State v. Dixon*, 560 P.2d 318, 320 (Utah 1977) (when prospective jurors "gave their word that they had no such bias or prejudice but could act as fair jurors[,] [i]t is to be assumed that they were not swearing falsely and that they believed they could act as conscientious arbiters in the case.").

Victimization of minor crimes is an unfortunate part of living in today's society. I do not believe that the risk of universal bias among prior victims is so great that it warrants a per se inference of bias that *must* automatically be rebutted in each and every case. In a great majority of the cases, a general probing, such as the probing conducted by the trial court in this case, will be sufficient to reveal those prior victims who might not be impartial. The majority's ruling will therefore create a significant burden upon our trial courts without creating any real benefit.

## CONCLUSION

I respectfully dissent from the majority's holding because it requires prospective jurors to be rehabilitated before any inference of bias has even been established. I view the trial court's decision to have been a factual determination that VanLeeuwen was impartial and therefore was capable of sitting on the jury without any rehabilitative inquiry. Inasmuch as VanLeeuwen said nothing that would facially challenge his impartiality, we should give the trial court's factual determination the deference it deserves.

The majority asserts that the approach recognized in this dissent would be difficult to administer. Let me summarize the approach in its simplest terms. When facts raise a question of whether a prospective juror *may* be biased, the trial court must probe until it is satisfied that the prospective juror is in fact impartial. If a prospective juror makes comments that show he or she is *probably* biased, then the trial court must ask questions to rebut that inference. If a prospective juror makes comments that reveal strong and deep impressions of bias, no rehabilitative inquiry is needed—that juror must be removed. I believe this approach is much simpler and gives more guidance to our trial courts than simply saying that the amount of inquiry needed will vary from case to case and in this case it just simply was not enough.

I also believe that this issue was not properly preserved for appeal and that, even if it was, defendant has failed to meet his burden of showing that VanLeeuwen could not have acted in a fair and impartial manner or that he was prevented from obtaining enough information to make that determination.[12]

I would therefore affirm.

---

**12.** The majority fails to adequately address an alternative basis for affirmance that has been properly raised and is before us. *Buehner Block Co. v. UWC Assocs.*, 752 P.2d 892, 894–95 (Utah 1988). VanLeeuwen did not sit as a juror, but was removed on a peremptory challenge by defendant. The law in this jurisdiction has historically been that it is prejudicial error for the trial court "to compel a party to exercise a peremptory challenge to remove a juror who should have been removed for cause." *Hewitt*, 689 P.2d at 25. The State urges that if this court finds that VanLeeuwen should have been removed for cause, as the majority does, then we must reevaluate the *Hewitt* line of cases in light of the recent case of *Ross v. Oklahoma*, 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988). The United States Supreme Court held therein that where a juror who should have been excused for cause was removed by defendant's peremptory challenge, "[a]ny claim that the jury was not impartial was required to focus, not on [the excused juror], but on the jurors who ultimately sat." 108 S.Ct. at 2277. The Supreme Court reasoned that as long as the jury which actually sat for the case was impartial, it was unimportant that defendant was forced to use a peremptory challenge to excuse a prospective juror. 108 S.Ct. at 2278 (citing *Hopt v. Utah*, 120 U.S. 430, 436, 7 S.Ct. 614, 616, 30 L.Ed. 708 (1887)).

In view of the majority's reversal, this alternative argument deserves discussion. The majority erroneously "assumes" that this issue has been considered by the Utah Supreme Court since it has decided two juror removal cases subsequent to the *Ross* decision being issued by the Supreme Court. Inasmuch as appellate courts are limited to the issues properly raised on appeal, the majority's assumption is unfounded. Since the Utah Supreme Court has never addressed this issue directly, the majority's ruling places it squarely before us now.