STATE of Utah, Plaintiff and Appellee,

v.

Hank COBB, Defendant and Appellant.

No. 870304.

Supreme Court of Utah.

May 3, 1989.

Ted K. Godfrey, Ogden, for defendant and appellant.

R. Paul Van Dam, Dan R. Larsen, Salt Lake City, for plaintiff and appellee.

HALL, Chief Justice:

Defendant appeals from his convictions for second degree murder in violation of Utah Code Ann. § 76–5–203 (Supp.1988) and for use of a dangerous weapon in a fight or quarrel in violation of Utah Code Ann. § 76–10–506 (1978). On appeal, he contends that (1) the trial court erred in admitting an autopsy photograph of part of the victim's body; (2) the trial court erred in failing to dismiss two prospective jurors for cause; (3) the evidence was insufficient to support his conviction for second degree murder; (4) the trial court erred in allowing his tape-recorded confession to be played to the jury; and (5) the trial court abused its discretion in enhancing his conviction with an additional sentence for using a firearm during the commission of the crime.

Defendant and his fiancee, Anne Sant, had lived together for some time when in January 1987, Ms. Sant broke their engagement and moved out of their home. Thereafter, defendant and Ms. Sant continued to date, but she dated other men as well. The victim had been friends with Ms. Sant for several years and occasionally socialized with her. After the engagement between Ms. Sant and defendant ended, the victim saw Ms. Sant more frequently.

During this time, Ms. Sant cancelled dates with defendant and he repeatedly accused her of sexual impropriety. After one occasion when defendant had accused her in such manner and threatened her life, she cancelled an upcoming date with him. Later that evening, defendant arrived at her place of employment at closing time and observed her leaving with the victim in his car.

Ms. Sant and the victim drove to a bar. After arriving at the bar, Ms. Sant received a telephone call from defendant, wherein he accused her of planning to "go home" with the victim. She replied that it was "none of his business" with whom she went home. A few minutes after the telephone call, she discovered that a tire on the victim's car had been slashed. The victim changed the tire, returned to the bar, and propped open the bar door in order to watch over his car.

Shortly thereafter, the victim observed defendant "creeping" toward the car. The victim rushed out the door, jumped over the hood of his car, and fought with defendant. During the fight, defendant shot the victim twice. Defendant then fired two shots in Ms. Sant's direction as she stood in the doorway of the bar.

After the shooting, defendant drove to a friend's house and told his friend that he had "shot some guy in the chest and some guy in the face and Annie." Defendant was subsequently arrested. Shortly after the arrest, officers informed him of his constitutional rights and proceeded to question him. During questioning, defendant confessed to shooting the victim. The victim died as a result of the bullet wounds.

■ Defendant's first point on appeal is that the trial court erred in admitting an autopsy photograph of the victim's body. At trial, the State offered expert testimony as to the location of the victim's wounds and the paths followed by the bullets as they entered his body. Additionally, the State offered several photographs depicting the victim's bullet wounds and supplementing the expert witnesses' descriptions to the jury. Defendant objected to the admission of one such photograph, exhibit 30–P.

On appeal, defendant contends that the admission of exhibit 30–P, which depicts

the condition of the victim's body after his chest had been opened in order to resuscitate him, was far more prejudicial than probative of the matter at issue. Defendant claims that the photograph should not have been admitted since as it "graphically depicted in gruesome detail, parts of the body where a ten-inch incision had been made by doctors."[1] As support for his claim, defendant cites rule 403 of the Utah Rules of Evidence and this Court's case precedent regarding the issue of the admission of photographs.[2]

After reviewing the photograph in question, we conclude that it is not gruesome. The photograph is dull in color, apparently taken the day after the crime when the victim's body had been washed and sutured. The photograph shows the victim's partially uncovered body lying supinely on what appears to be a clean surface. Only the area between the thigh and chest (where the two wounds were inflicted) is exposed. The victim's head and face are not shown. The body is relatively clear of blood, and a medical incision resembling a scar is only partially visible on the victim's chest. The photograph is neither an enlargement nor a close-up. It does not display the "gruesome" qualities which have constituted error in previous cases involving the admission of photographs.[3]

The State contends that the photograph was admissible under rule 403 to show defendant's purposeful act in shooting the victim and to refute his claim that the victim died accidentally. We agree. Rule 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

At trial, defendant testified that the gun went off accidentally, killing the victim as the two struggled. The State offered expert testimony and the photographs to refute defendant's accidental death theory and illustrate the probable position of defendant in relation to the victim at the time of the shooting. While defendant claims that the picture in question was superfluous because similar testimony could have been elicited from experts, we have held that the fact that the same evidence could have been provided by purely testimonial means does not necessarily make a photograph inadmissible.[4] Accordingly, we conclude that the trial court did not err in admitting the photograph.[5]

Defendant next contends that the trial court erred in refusing to dismiss two prospective jurors for cause. At the close of the jury selection, defendant challenged Joyce Lloyd on the ground that her prior acquaintance with the prosecuting attorney rendered her unfit to sit as a juror. Defendant also challenged Jesse Holden because of his former employment as a police officer. The trial court refused to remove the two jurors for cause. Defendant later exercised two peremptory challenges to remove these two individuals from the jury.

This Court has stated that it is prejudicial error to compel a party to exercise a peremptory challenge to remove a jury panel member who should have been removed for cause.[6] Thus, we must determine whether the trial court abused its discretion in refusing to remove prospective jurors Lloyd and Holden.

---

1. While defendant's brief suggests that the court erred in admitting several photographs, his objection at trial and his brief on appeal specifically address only the admissibility of exhibit 30–P. Thus, we review defendant's claim only as to that particular photograph.

2. See, e.g., State v. Lafferty, 749 P.2d 1239, 1256–57 (Utah 1988); State v. Cloud, 722 P.2d 750, 752–55 (Utah 1986); State v. Garcia, 663 P.2d 60, 63–65 (Utah 1983); State v. Wells, 603 P.2d 810, 813 (Utah 1979); State v. Poe, 21 Utah 2d 113, 117–18, 441 P.2d 512, 514–15 (1968).

3. See supra note 2.

4. See State v. Valdez, 748 P.2d 1050, 1055 (Utah 1987).

5. See infra notes 17 & 18 and accompanying text.

6. State v. Bishop, 753 P.2d 439, 451 (Utah 1988).

■ Rule 18(e)(14) of the Utah Rules of Criminal Procedure allows for a challenge for cause against a prospective juror when it is clear that "a state of mind exists on the part of the juror with reference to the cause, or to either party, which will prevent him from acting impartially and without prejudice to the substantial rights of the party challenging [the juror]." "Impartiality" is defined as "a mental attitude of appropriate indifference." [7] When comments are made which facially question a prospective juror's partiality or prejudice, an abuse of discretion may occur unless the challenged juror is removed by the court or unless the court or counsel investigates and finds the inference rebutted.[8]

■ In the case at hand, defendant contends that Ms. Lloyd's statements demonstrated that her prior relationship with the prosecutor would likely prejudice her against defendant. However, review of the voir dire indicates that Ms. Lloyd was only acquainted with the prosecuting attorney fifteen years earlier when he was a senior in high school and his family was stationed in Washington, D.C. For a period of approximately one year, the prosecutor was a friend of one of Ms. Lloyd's daughters and the two families belonged to the same church organization. Ms. Lloyd stated that she had not seen or had any contact with the prosecutor since their prior acquaintance. In response to her comment that she remembered the prosecutor as a "nice kid," defense counsel asked:

Do you think knowing that he's here representing the State, participating in representing the State, do you think that in your—your association with him, do you think that would cause you any—or cause you to be swayed to one side or to his side basically?

Ms. Lloyd: No. No, I guess you were a nice kid when you were that age, too, but it's been a long time since I saw him.

I've had no personal connection with him for a long time.

[Defense counsel]: He could have changed?

Ms. Lloyd: He could have changed, yeah.

Review of Ms. Lloyd's answers to counsel's questions reveals that her brief acquaintance with the prosecutor was not the type of relationship that would warrant an inference of bias, especially in light of a later statement where she expressed no doubts about her ability to decide the case impartially regardless of any attenuated acquaintance with the prosecutor. Accordingly, we conclude that the trial court did not err in refusing to dismiss Ms. Lloyd for cause.

■ Defendant also contends that Mr. Holden should have been excused for cause since he stated during voir dire that he had "very, very strong feelings about the taking of human life." However, defendant did not raise this claim below. Instead, defendant moved to excuse Mr. Holden for cause solely on the ground that he had experience in law enforcement.

As we have repeatedly stated:

A general rule of appellate review in criminal cases in Utah is that a contemporaneous objection or some form of specific preservation of claims of error must be made a part of the trial court record before an appellate court will review such a claim on appeal.[9]

Importantly, the grounds for an objection must be specifically and distinctly stated.[10] Failure to meet these requirements precludes review of defendant's claim on appeal.

■ Nevertheless, considering *arguendo* defendant's contention regarding Mr. Holden, we remain unconvinced that the trial court abused its discretion. Rule 18(e)(13) of the Utah Rules of Criminal Procedure allows a challenge for cause to be taken where a juror has "formed or expressed an

---

7. *Id.* at 451.

8. *Id.*

9. *State v. Tillman,* 750 P.2d 546, 551 (Utah 1987) (footnote omitted).

10. *Hansen v. Stewart,* 761 P.2d 14, 16 (Utah 1988) (civil case); *Tillman,* 750 P.2d at 551.

unqualified opinion or belief as to whether the defendant is guilty or not guilty." As noted, if comments raise a question of partiality or prejudice against a defendant, an abuse of discretion may occur unless the challenged juror is removed or unless further investigation finds the inference rebutted.[11] Rebuttal of such an inference is accomplished by "showing that the statement was merely the product of a 'light impression' and not one that would 'close the mind against the testimony that may be offered in opposition.' "[12]

In the case at hand, the court questioned the prospective juror:

Mr. Holden: As I said earlier, I'm a former police officer. I spent 1967 and '68 with the Ogden City Police Reserve, 1972 and '73 with the City of Willard in Box Elder County. As far as jury goes, I was the foreman at the last jury in this court on Monday and Tuesday in a civil case. As far as trying this case, I have very, very strong feelings about the taking of human life.

The Court: But you must understand we—it's awful easy to feel bad if somebody gets killed, but what I'm going to be asking you to make a decision about is responsibilities for it. Is there any reason why you can't answer these questions objectively for us?

Mr. Holden: No.

Further questioning was conducted by the prosecutor:

[The prosecutor]: All right. Okay. Mr. Holden, you're strongly against the taking of human life.

Mr. Holden: Yes.

[The prosecutor]: Now, you realize that I think most—I think probably everybody on the panel is of that mind. Does that state of mind, would that prejudice you against this defendant as you sit there?

Mr. Holden: As I sit here this moment, no.

[Prosecutor]: Okay. You have an open mind to hear the evidence and make up your mind if you were picked as a juror on the evidence you hear?

Mr. Holden: That's correct.

[The prosecutor]: And you could be fair to both sides?

Mr. Holden: I believe so. I would certainly hope so.

After the foregoing questioning, defense counsel inquired of the prospective juror as to his experience as a police officer and the effect such experience would have upon his ability to be an objective juror:

[Defense counsel]: Mr. Holden, did you—when you were a police officer, did you ever arrest anybody that you didn't think was guilty?

Mr. Holden: Yes.

[Defense counsel]: Do you think that— do you realize that there are two sides to every case, right?

Mr. Holden: That's correct.

[Defense counsel]: And do you understand that the State is the one that has the burden to prove that the defendant committed this crime?

Mr. Holden: (Mr. Holden nods.)

[Defense counsel]: And you understand that the State does get to go first with their case?

Mr. Holden: Yes.

[Defense counsel]: And do you feel that you can—even with your job as a former police officer and the fact that the State gets to go first, do you think you can hold off making a decision as to the guilt or innocence of the defendant until after you hear all of the evidence?

Mr. Holden: I believe one of the charges we receive is that we will not choose or decide the case until after, and I believe I can do that, yes.

[Defense counsel]: Do you think you can be fair?

Mr. Holden: I think so. I should hope so.

Mr. Holden's answers to the above questions reflect that he was willing to keep an open mind and apply the law as the court instructed. Even if some of Mr. Holden's

---

**11.** *Bishop,* 753 P.2d at 451.

**12.** *Id.* (quoting *State v. Bailey,* 605 P.2d 765, 768 (Utah 1980)).

statements can be read as facially raising the issue of impartiality, subsequent questioning by counsel cleared up any doubts regarding Mr. Holden's ability to be an impartial juror.[13] Accordingly, the court did not err in refusing to dismiss prospective juror Holden for cause.

■ Defendant next contends that the evidence introduced at trial was insufficient to support his conviction for second degree murder. Specifically, defendant claims that the evidence does not support a finding that he intended to kill the victim. In the face of such a challenge, the evidence and the reasonable inferences which may be drawn therefrom must be viewed in the light most favorable to the jury's verdict. Indeed, a jury's conviction is reversed for insufficient evidence only when " 'the evidence, so viewed, is sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime of which he was convicted.' " [14] Application of this standard in the instant case prompts the conclusion that defendant's point on appeal is without merit.

Under Utah Code Ann. § 76–5–203(1)(a) (Supp.1988), criminal homicide constitutes murder in the second degree if the actor intentionally or knowingly causes the death of another. Utah Code Ann. § 76–2–103 (1978) in pertinent part, states that a person engages in conduct:

(1) Intentionally, or with intent or willfully with respect to the nature of his conduct or to a result of his conduct, when it is his conscious objective or desire to engage in the conduct or cause the result.

(2) Knowingly, or with knowledge, with respect to his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or the existing circumstances. A person

acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

In view of defendant's conduct and the circumstances surrounding the same, the jury in the instant case could determine beyond a reasonable doubt that it was defendant's conscious objective or desire to cause the victim's death and that he was also aware of the nature of his conduct and the existing circumstances and that his conduct was reasonably certain to cause the end result.[15] The fact that defendant was carrying a loaded handgun and the evidence concerning the apparent position of the victim at the time the gun was twice fired further support the determination that defendant intentionally or knowingly killed the victim. Accordingly, when viewed in the light most favorable to the jury verdict, the evidence is not sufficiently inconclusive or inherently improbable such that reasonable minds must have entertained a reasonable doubt that defendant committed the crime of which he was convicted.[16]

■ Defendant next claims that the trial court erred in allowing defendant's tape-recorded confession to be played to the jury. During trial, defendant testified that he did not intend to kill the victim and that the death was accidental. On cross-examination, the State attempted to impeach defendant by questioning him regarding several incriminating statements he made to officers on the night of the shooting. In spite of the State's effort, defendant repeatedly claimed that he could not remember making the statements. Thereafter, the State requested that his tape-recorded confession be played for the jury. The trial court granted the State's request over defendant's objection that it was "an undue delay, waste of time."

13. *Bishop,* 753 P.2d at 452.

14. *State v. Marcum,* 750 P.2d 599, 601 (Utah 1988) (quoting *State v. Miller,* 709 P.2d 350, 355 (Utah 1985); *State v. Petree,* 659 P.2d 443, 444 (Utah 1983)).

15. *See State v. Simmons,* 759 P.2d 1152, 1156 (Utah 1988) (Hall, C.J., concurring and dissenting).

16. *See supra* note 14.

As noted above, rule 403 of the Utah Rules of Evidence authorizes the trial court, in determining the admissibility of relevant evidence, to weigh its probative value against the prejudice that might result from its admission.[17] And we will not disturb the ruling of the trial court on questions regarding the admissibility of evidence unless it clearly appears that the lower court was in error.[18] In the instant case, because of defendant's lack of memory regarding his incriminatory statements, the tape-recording was probative to refresh the same, impeach his testimony, and refute his accidental death theory. While the tape-recorded confession may have been cumulative of defendant's statements introduced through other means, we do not find that the court clearly erred in its determination that the tape was admissible. Thus, we conclude that defendant's claim is without merit.

█ Finally, defendant contends that the trial court abused its discretion in imposing an enhanced sentence for use of a firearm during the commission of the felony. After finding that defendant was guilty of second degree murder committed with a firearm, the trial court sentenced him to serve an indeterminate term of five years to life for commission of the felony and an indeterminate term of up to five years to be served consecutively for use of a firearm in the commission of the crime. Enhancement of the sentence was based upon Utah Code Ann. § 76–3–203(1) (Supp.1988). That provision states:

A person who has been convicted of a felony may be sentenced to imprisonment for an indeterminate term as follows:

(1) In the case of a felony of the first degree, for a term at [sic] not less than five years, unless otherwise specifically

provided by law, and which may be for life but if the trier of fact finds a firearm or a facsimile or the representation of a firearm was used in the commission or furtherance of the felony, the court shall additionally sentence the person convicted for a term of one year to run consecutively and not concurrently; and the court may additionally sentence the person convicted for an indeterminate term not to exceed five years to run consecutively and not concurrently.

(Emphasis added.) Based upon the jury's verdict and this provision, the trial court was required to sentence defendant to a mandatory one-year consecutive enhancement term or, in its discretion, to an indeterminate consecutive term of not more than five years. As stated in *State v. Willett*,[19] "[A] mandatory one-year minimum enhancement sentence [pursuant to section 76–3–203] must be imposed for use of a firearm in cases involving first and second degree felonies. In such cases, the judge's only discretion lies in sentencing for more than one year but not more than five years."[20]

Nevertheless, on appeal, defendant contends that since "little thought was involved in the enhancement of Defendant's sentence" and since "[t]he circumstances of this killing clearly do not justify the maximum enhancement penalty of five years," the trial court abused its discretion in imposing the five-year enhanced sentence.

Once a defendant is convicted of a crime by plea or by verdict, "the matter of sentencing rests entirely within the discretion of the trial court, within the limits prescribed by law."[21] Having determined that the enhanced sentence was statutorily permissible,[22] and given the trial court's finding that defendant deliberately armed

---

**17.** *See State v. Knowles,* 709 P.2d 311, 312 (Utah 1985).

**18.** *State v. Gray,* 717 P.2d 1313, 1316 (Utah 1986).

**19.** 694 P.2d 601 (Utah 1984).

**20.** *Id.* at 603; *see also State v. Angus,* 581 P.2d 992, 994 (Utah 1978) (legislature has authority

to increase penalty for crime involving use of firearms); *cf. State v. O'Brien,* 721 P.2d 896, 900 (Utah 1986) (application of sentence enhancement).

**21.** *State v. Jolivet,* 712 P.2d 843, 844 (Utah 1986) (per curiam).

**22.** *Id.*

himself and had committed previous offenses involving violence, we conclude that the trial court did not abuse its discretion in imposing the enhanced sentence in this case.

We have reviewed defendant's other contentions on appeal and find them to be without merit. The judgment and conviction are affirmed.

RICHARD C. HOWE, Associate Chief Justice and DURHAM and ZIMMERMAN, JJ., concur.

STEWART, J., concurs in the result.