**STATE of Utah, Plaintiff and Appellee,**

v.

**Chuck COX, Defendant and Appellant.**

**No. 910058–CA.**

Court of Appeals of Utah.

Jan. 31, 1992.

Eric P. Swenson (argued), Monticello, for appellant.

R. Paul Van Dam, State Atty. Gen. and Kenneth A. Bronston, Asst. Atty. Gen. (argued), Salt Lake City, for appellee.

Before BILLINGS, GARFF and GREENWOOD, JJ.

## OPINION

GREENWOOD, Judge:

Defendant Chuck Cox appeals from his convictions of burglary, a second degree felony, in violation of Utah Code Ann. § 76-6-202 (1990), and theft, a third degree felony, in violation of Utah Code Ann. § 76-6-404 (1990). We reverse and remand for a new trial because the trial court failed to remove a prospective juror for cause.

## FACTS

In November 1989, defendant and two friends, Ronnie Wells and Dustin Bisset, went on a firewood gathering trip in the La Sal Mountains in San Juan County. When their truck ran out of gas, they abandoned it and walked out of the mountains. Defendant and Wells returned the next day to

retrieve the truck. Wells, who later testified for the State, claimed that during the second trip to the mountains, he and defendant stopped at a cabin owned by David Bierschied to use the telephone. Wells testified that no one was inside the cabin. He stated that defendant went around to the side of the cabin and returned with two hunting bows. Wells did not see defendant actually go into the cabin. Wells testified that defendant later gave him the bows in lieu of payment on a debt. At Wells's request, his wife pawned the bows at a pawn shop in Grand Junction, Colorado.

The San Juan County Sheriff investigated the theft and burglary of Bierschied's cabin and recovered a knife taken from the cabin. Officers obtained the knife from an informant, Michael Beeson, who claimed Wells gave it to him. Beeson stated that either Wells or defendant told him the knife had been taken in a burglary. Defendant, Wells, and Wells's wife were charged with various offenses. The charges against Wells's wife were eventually dropped and Wells pled guilty to class A misdemeanor theft. Defendant was charged with burglary, a second degree felony, and theft, a third degree felony.

At defendant's trial, Bierschied testified that he owned the cabin in the La Sal Mountains. He testified that no one lived in the cabin on a daily basis and that it was occupied less than fifty percent of the time. Bierschied said his permanent residence was in Moab, but he spent two or three days a week at his cabin. He identified the bows and knife as his and stated that the items had been in his cabin the last time he was there.

Defendant testified that he and Wells did not stop at the cabin and that he did not take the bows or knife missing from Bierschied's cabin. James Franklin, an occasional employer of defendant, testified that in November 1989, he overheard a conversation in which Wells asked defendant to look over some hunting bows Wells's father had sent to him and that defendant declined. Defendant's friend, Tina Plumb, testified that during this same conversation, she heard her brother, Michael Beeson, ask de-

fendant if he had a knife he wanted to sell. She stated that defendant said he did not, and that Wells then took a knife from his pocket and offered it to Beeson.

Following the jury trial, defendant was convicted of both charges. The trial court denied defendant's motion for a new trial. This appeal followed.

## ISSUES

Defendant asserts the following arguments on appeal: (1) the trial court erred in failing to excuse a potential juror for cause; (2) the trial court erred in excluding evidence offered to show Wells's bias; (3) the burglary charge was improper because the cabin is not a dwelling; (4) the trial court erred in excluding defendant's jury instructions and using an improper reasonable doubt instruction; (5) defendant's right to a fair trial was violated when he was transported from the jail to the courthouse lobby in shackles; (6) the trial court erred in denying his motion for a new trial; and (7) the cumulative effect of the trial court's errors prejudiced defendant's right to a fair trial.

## JUROR BIAS

■ Defendant argues that the trial court erred in failing to dismiss a prospective juror, Rhea Austin, for cause. During voir dire, Austin revealed that her brother-in-law was the Chief of Police in Blanding, Utah, one of two primary municipalities in San Juan County. The court also discovered that the prosecutor had served as Austin's attorney in some private matters as recently as one month prior to defendant's trial. The court's inquiry of Austin during voir dire was as follows:

> THE COURT: Have you or any members of your family worked for any police departments?
>
> MS. AUSTIN: My brother-in-law is the chief of police in Blanding.
>
> THE COURT: Your brother-in-law. I see. Do you talk to him about his work quite often?
>
> MS. AUSTIN: No.

THE COURT: Do you think the fact that your brother-in-law is the chief of police in Blanding—do you think that fact would make you want to give more or less weight to the testimony of a police officer—because of that fact, or do you think you could give it the fair weight you think it's entitled to receive regardless whether it's a police officer or not?

MS. AUSTIN: Yes.

THE COURT: You don't think that would bother you?

MS. AUSTIN: No.

. . . .

THE PROSECUTOR: Your Honor, I have just been handling a case for Mrs. Austin. I am no longer an attorney on that case, but it's probably been in the last month that I've had that association. Maybe you've already gone through that or you're going to go through it later, but you might want to inquire into that.

THE COURT: Well, of course, we'll get to that eventually. But you say you have had that relationship with Mrs. Austin. Mrs. Austin is Mr. Halls presently your lawyer? Do you have a present on-going attorney-client relationship with him?

MS. AUSTIN: He's not doing anything for me right now.

THE COURT: But he has in the past?

MS. AUSTIN: He has in the past.

THE COURT: How long ago was that?

MS. AUSTIN: Well, like he said, it's probably just been a month since the last time.

THE COURT: I see. But that matter has been concluded. Did that involve some private matters—business matters and that sort of thing?

MS. AUSTIN: Yes.

THE COURT: It wasn't a criminal investigation or anything of that sort?

MS. AUSTIN: No.

THE COURT: In other words, it was involved in a private attorney-client relationship?

MS. AUSTIN: That's right.

THE COURT: Was there anything in that, Mrs. Austin, that would make you want to give more or less weight to what he's advocating in this case?

MS. AUSTIN: No.

THE COURT: You see, this is an advocacy procedure where one side is advocating one thing and the other side is advocating something else, and the jury has to base their decision on what they think are the true facts of the case. Do you think that what he has done in the past, your relationship, would make you want to give more or less weight to what he's advocating?

MS. AUSTIN: I don't think so.

Defendant challenged Austin for cause based on both of these relationships. The court denied the challenge. Defendant then used a peremptory challenge to dismiss Austin from the jury panel.

Defendant argues that because of Austin's relationship to the Blanding Chief of Police and to the prosecutor, her ability to be impartial as a juror in this case was questionable. He contends that the trial court committed reversible error by failing either to remove her for cause or adequately question her to determine whether she could be impartial.

"A motion to dismiss a prospective juror for cause is within the sound discretion of the trial court. When reviewing such a ruling, we reverse only if the trial court has abused its discretion." *State v. Woolley*, 810 P.2d 440, 442 (Utah App.) *cert. denied*, 826 P.2d 651 (Utah 1991) (citing *State v. Gotschall*, 782 P.2d 459, 462 (Utah 1989)).

"[I]t is prejudicial error to compel a party to exercise a peremptory challenge to remove a jury panel member who should have been removed for cause." *State v. Cobb*, 774 P.2d 1123, 1125 (Utah 1989) (citing *State v. Bishop*, 753 P.2d 439, 451 (Utah 1988)); *Woolley*, 810 P.2d at 443 (citing *Gotschall*, 782 P.2d at 461).

The trial court has a "duty to see that the constitutional right of an accused to an impartial jury is safeguarded." *Woolley*, 810 P.2d at 442 (citing *State v. Dixon*, 560 P.2d 318, 319–20 (Utah 1977)). The Utah Supreme Court "has reversed

criminal convictions based solely on the appearance that such right may have been jeopardized." *Id. See, e.g., State v. Cantu,* 778 P.2d 517 (Utah 1989).

■ Defendant argues that under Utah Rules of Criminal Procedure 18(e)(4) and 18(e)(14), Austin should have been removed for cause. Rule 18(e)(4) states that a juror may be removed for cause when "the existence of any social, legal, business, fiduciary or other relationship between the prospective juror and any party ... when viewed objectively, would suggest to reasonable minds that the prospective juror would be unable or unwilling to return a verdict which would be free of favoritism." Rule 18(e)(14) provides that a juror may be removed for cause when "a state of mind exists on the part of the juror with reference to the cause, or to either party, which will prevent him from acting impartially and without prejudice to the substantial rights of the party challenging [the juror]." A juror's relationship with a party's legal counsel may be sufficient to raise a question of bias. *See Cobb,* 774 P.2d at 1126.

"When comments are made which facially question a prospective juror's partiality or prejudice, an abuse of discretion may occur unless the challenged juror is removed by the court or unless the court or counsel investigates and finds the inference rebutted." *Id.* To rebut an inference of partiality, the trial court *"must* adequately probe [the] juror's potential bias," *Woolley,* 810 P.2d at 442 (emphasis in the original), and receive, through its questioning, sufficient evidence that the juror will act impartially. *State v. Bailey,* 605 P.2d 765, 771 (Utah 1980). "The court's discretion is properly exercised when deciding whether to dismiss a juror for cause only after this investigation takes place." *Woolley,* 810 P.2d at 442.

■ Austin's relationships with the prosecutor and the Blanding Chief of Police raised a question of her ability to be impartial. The trial court therefore had a duty either to excuse her or further question her about these relationships and determine whether she could act impartially. The depth of investigation required varies in each situation and "is necessarily dependent on the juror's responses to the questions asked. Nevertheless, the exploration should not be merely pro forma." *Id.* at 445. An inference of bias "is generally not rebutted simply by a subsequent general statement by the juror that he or she can be fair and impartial." *Id.* Such a statement "loses much of its meaning in light of other testimony and facts which suggest a bias." *Id.* (quoting *State v. Hewitt,* 689 P.2d 22, 26 (Utah 1984)). "The court, not the juror, must determine a juror's qualifications." *State v. Jones,* 734 P.2d 473, 475 (Utah 1987), *cert. granted,* 789 P.2d 33 (Utah 1990), *aff'd,* 808 P.2d 1056 (Utah 1991).

In *State v. Brooks,* 563 P.2d 799 (Utah 1977), the Utah Supreme Court found that the trial court should have discharged two jurors for cause, when they both stated they were close personal friends of the prosecution's chief witness. Despite the jurors' assurances that they could serve without bias or prejudice, the supreme court noted that "[a] juror, who through a personal association with a witness or party has developed a relationship of affection, respect, or esteem, cannot be deemed disinterested, indifferent, or impartial." *Id.* at 802.

In this case, questions asked Austin regarding her relationship with her former attorney, the prosecutor, did not adequately refute the inference of bias presented by that relationship. The court failed to inquire when and for how long the prosecutor had represented Austin, or Austin's opinion of the prosecutor. The court failed to ask the types of questions or to elicit answers that would provide necessary and helpful insight into the extent of their attorney-client relationship and Austin's ability to be impartial as a juror. Austin's responses, in fact, indicated a long term relationship, renewed periodically when legal services were sought. Such a relationship of respect and trust justifies an inference that juror Austin "could not act with 'entire impartiality.'" *Id.* While we still might be inclined to defer to the trial court's judgment concerning the brother-in-

law chief of police relationship, the recent attorney-client relationship with the prosecutor tips the scale in favor of defendant's right to an impartial jury. The cumulative effect of Austin having two possibly prejudicial relationships is especially troubling given "that it is a simple matter to obviate any problem of bias simply by excusing the prospective juror and selecting another." *Woolley*, 810 P.2d at 442 (quoting *Jenkins v. Parrish*, 627 P.2d 533, 536 (Utah 1981)).

We find that because of the trial court's limited questioning of Austin, given her relationships with both the prosecuting attorney and the Blanding Chief of Police, the trial court abused its discretion in failing to remove her from the panel for cause. We therefore reverse and remand for a new trial. We proceed to address only those remaining issues which may recur upon retrial. *State v. James*, 819 P.2d 781, 794 (Utah 1991).

## EXCLUSION OF EVIDENCE

■ Defendant argues that the trial court erred in excluding the following proposed exhibits offered by defendant to challenge Wells's credibility: (1) the information filed against Wells charging him with second degree burglary and third degree theft; (2) the judgment and sentence for Wells's guilty plea to misdemeanor theft; and (3) the amended judgment and sentence of Wells.[1] The trial court excluded these documents on the grounds that they were not probative and that they lacked foundation. Defendant claims the trial court's exclusion of these documents violated his federal due process and confrontation clause rights as well as rule 608(c) of the Utah Rules of Evidence. This rule provides that "[b]ias, prejudice or any motive to misrepresent may be shown to impeach the witness either by examination of the witness or by evidence otherwise adduced."

■ Although a cross-examiner should be allowed "wide latitude in exposing a witness' potential bias," *State v. Hackford*, 737 P.2d 200, 203 (Utah 1987), the right of cross-examination is limited by Utah Rule of Evidence 403. *Id.* This rule states:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

"[A]ppraisal of the probative and prejudicial value of evidence under rule 403 is generally entrusted to the sound discretion of the trial judge and will not be upset on appeal absent manifest error." *State v. Jaimez*, 817 P.2d 822, 824 (Utah App.1991) (quoting *State v. Maurer*, 770 P.2d 981, 983 (Utah 1989)).

■ The proponent of evidence offered to show bias must lay a foundation for the evidence in order for it to be admissible. *See State v. Clayton*, 658 P.2d 621, 623 (Utah 1983) (per curiam). "To permit an exploration of potential bias without adequate foundation for the questions asked certainly can create a danger of unfair prejudice." *Hackford*, 737 P.2d at 203.

Defendant did not offer these documents into evidence until the close of his case, after he had completed cross-examining Wells. Wells was no longer on the witness stand and defendant did not attempt to recall him. Defendant did not lay any foundation for any of the documents.

We find that there was no error by the trial court in excluding these documents. The documents demonstrated that Wells was charged with a felony and pled to a misdemeanor. There was no independent foundation offered by defendant, however, to show that Wells received leniency, and therefore the exhibits were simply speculative as to Wells's bias. Furthermore, because they were not offered as part of

---

**1.** Defendant also contends the trial court erred in not admitting the court's minute entry dismissing the charges against Wells's wife. The court did, however, admit the information charging Mrs. Wells with a felony, which was used for the same purpose by defendant as sought through the minute entry. Therefore, any error in excluding the minute entry was harmless.

defendant's cross-examination of Wells, they were potentially unfairly prejudicial. We conclude that defendant did not lay the necessary foundation and it was within the trial judge's discretion to find that they were not sufficiently probative.

## BURGLARY CHARGE

■ Defendant argues the trial court erred in not dismissing the second degree felony burglary charge against him. He claims that the cabin is not a "dwelling" within the meaning of Utah Code Ann. § 76–6–202(2) (1990) and therefore, the most he could be charged with and convicted of is third degree felony burglary.

Section 76–6–202 provides:

(1) A person is guilty of burglary if he enters or remains unlawfully in a building or any portion of a building with intent to commit a felony or theft or commit an assault on any person.

(2) Burglary is a felony of the third degree unless it was committed in a dwelling, in which event it is a felony of the second degree.

The definition of "dwelling" as used in this statute is provided in Utah Code Ann. § 76–6–201 (1990) and states that a dwelling is "a building which is usually occupied by a person lodging therein at night, whether or not a person is actually present."

■ We review the trial court's statutory interpretation on a correction of error standard. *James*, 819 P.2d 781, 796 (Utah 1991). A statute should be interpreted utilizing the plain meaning of its words. *Jaimez*, 817 P.2d 822, 826 (Utah App.1991).

■ The term "usually occupied" refers to the purpose for which the structure is used. If the structure is one in which people typically stay overnight, it fits within the definition of dwelling under the burglary statute. A similar Michigan statute, referring to an "occupied dwelling," was considered in *People v. McClain*, 105 Mich.

App. 323, 306 N.W.2d 497, 499 (1981). The court concluded that the term included a house under construction in which the owner slept only on weekends and holidays, noting the possibility of confrontation between the owner and an intruder. *Id.* Likewise, our second degree burglary statute is intended to protect people while in places where they are likely to be living and sleeping overnight, as opposed to protecting property in buildings such as stores, business offices, or garages. We agree with the trial court that the cabin is a dwelling and that defendant was therefore properly charged with second degree felony burglary.

## JURY INSTRUCTIONS

Defendant argues that the trial court erred in refusing to submit to the jury defendant's proposed jury instruction as to the lesser included offense of misdemeanor criminal trespass and defendant's instruction regarding witness credibility. Defendant contends that the trial court's refusal to allow these jury instructions violated defendant's due process rights. Defendant also argues that the reasonable doubt instruction the court used prejudiced him because it minimized the State's constitutionally required burden of proof.

### Lesser Included Instruction

■ We find no error by the trial court in excluding defendant's proposed lesser included offense instruction. The trial court must give a lesser included offense instruction if "the evidence is ambiguous and susceptible to alternative explanations ... [and] if any one of the alternative interpretations provides both a rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense." *State v. Velarde*, 734 P.2d 449, 451 (Utah 1986). In this case, there was no rational basis upon which the jury could have acquitted defendant of burglary and theft and convicted him of criminal trespass.[2] No evidence was presented

**2.** Criminal trespass as codified in Utah Code Ann. § 76–6–206 (1990) provides in pertinent part:

A person is guilty of criminal trespass if ...

suggesting that defendant entered the property with intent to commit a crime other than theft. Defendant testified he never entered the cabin, while Wells testified that defendant emerged from behind the cabin with the bows in hand. Therefore, because there was no substantial evidence to support a trespass theory, defendant was not entitled to the lesser included instruction. *See State v. Ricci,* 655 P.2d 690, 692 (Utah 1982).

### Credibility Instruction

 We also find no error in the trial court's exclusion of defendant's credibility instruction. "It is not error to refuse a proposed instruction if the point is properly covered in the other instructions." *State v. Sessions,* 645 P.2d 643, 647 (Utah 1982). Here the court included a sufficient jury instruction discussing witness credibility and the factors the jurors could consider in weighing each witness's credibility. Inclusion of defendant's instruction, while more specific, would merely have been cumulative.

### Reasonable Doubt Instruction

Finally, we find no error in the reasonable doubt instruction submitted to the jury. In *State v. Pedersen,* 802 P.2d 1328, 1331–32 (Utah App.1990) *cert. denied,* 815 P.2d 241 (Utah 1991), we held that if "the court's instruction was appropriate, we

> (a) He enters or remains unlawfully on property and:
>
> . . . . .
>
> (ii) Intends to commit any crime, other than

need not consider whether defendant's proposed instruction might also have been proper or even preferable." In this case, the trial court gave a reasonable doubt instruction which adequately instructed the jury as to the State's burden of proving each element of every crime charged beyond a reasonable doubt. *Id.* Thus, the trial court did not err in using the instruction.

### CONCLUSION

Because we find that the trial court erred in failing to remove prospective juror Austin from the jury panel for cause, we reverse and remand to the trial court for a new trial. We find defendant's claims regarding exclusion of evidence and jury instructions to be without merit. We do not address the points raised which are rendered moot by our disposition of the juror issue.

Reversed and remanded.

BILLINGS and GARFF, JJ., concur.