**STATE of Utah, Plaintiff and Appellee,**

v.

**Maximo Ramon RAMOS, Defendant and Appellant.**

**No. 930305–CA.**

Court of Appeals of Utah.

May 25, 1994.

Robert K. Heineman (argued), Lisa J. Remal, Salt Lake Legal Defender Ass'n, Salt Lake City, for appellant.

Julie George (argued), Ralph E. Chamness, Asst. Attys. Gen., Jan Graham, State Atty. Gen., Salt Lake City, for State.

Before BILLINGS, DAVIS and ORME, JJ.

## OPINION

BILLINGS, Presiding Judge:

Defendant Maximo Ramon Ramos appeals from a conviction for distribution of a controlled substance, a second degree felony, in violation of Utah Code Ann. § 58–37–8(1)(a)(ii) (1990). We affirm.

## FACTS

In January 1992, undercover Detective Edward Lucas contacted defendant's roommate at a hotel to arrange a cocaine purchase. Detective Lucas met defendant in the hotel lobby and told him he was about to buy a half-ounce of cocaine. Defendant directed him to return in twenty to thirty minutes. Upon his return, the two went upstairs to defendant's room, where defendant spoke in Spanish to his roommate and then made a phone call.

Detective Lucas, defendant, and defendant's roommate then drove in the detective's truck to a Salt Lake City apartment building. Once there, Detective Lucas gave defendant's roommate five $100 bills, which defendant took and examined before returning them to his roommate. His roommate took the money and entered the apartment building, returning with a package of cocaine. He gave the package to defendant, who in turn handed it to Detective Lucas.

Based upon these circumstances, defendant was arrested in October 1992 and charged with distribution of a controlled substance. During jury voir dire at trial, defendant challenged prospective juror Scholle for cause because of Scholle's prior employment as a police dispatcher. The trial court denied defendant's challenge. Consequently, defendant used his first peremptory challenge to remove Scholle and ultimately exhausted his remaining challenges.

At trial, Detective Lucas made an in-court identification of defendant on direct examination. On cross-examination Detective Lucas testified that when he identified defendant prior to making an arrest, he had not used a line-up but rather had used a photograph. When probed, he testified that he hesitated to name the photograph because he was "afraid" that if he mentioned it, "it may prejudice the jury." Detective Lucas answered several related questions on cross-examination and on redirect explained that he confirmed defendant's identity by reviewing a photograph of him. The State proffered the photograph, which was a mug shot, and the trial court admitted it after excising the booking information and date.

The prosecution's case centered on the testimony of Detective Lucas, who described his undercover work and his methods of obtaining evidence. Defendant extensively cross-examined the detective about those practices, but the court curtailed inquiry concerning the use of confidential informants in other cases and what benefits they might receive.

The jury found defendant guilty, and the court sentenced him to one to fifteen years in prison, a $500 fine plus a surcharge, and $500 restitution. The court stayed the imposition of the prison sentence and placed defendant on thirty-six months probation. Defendant appeals, arguing: (1) the trial court should have removed juror Scholle for cause; (2) the photograph should not have been admitted into evidence; and (3) the trial court improperly prevented him from probing into Detective Lucas's practices with informants.

## I. FAILURE TO STRIKE JUROR FOR CAUSE

Defendant claims the trial court erred in failing to remove juror Scholle for cause. Because the trial court did not strike Scholle for cause, defendant used a peremptory challenge to remove him and subsequently exhausted his remaining challenges. Defendant asserts that forcing him to use a peremptory challenge to remove Scholle was prejudicial error necessitating a new trial.

■ A motion to dismiss a prospective juror for cause is within the sound discretion of the trial court and will be reversed only if the trial court abused its discretion. *State v. Woolley*, 810 P.2d 440, 442 (Utah App.), *cert. denied*, 826 P.2d 651 (Utah 1991). Tempering that deference, however, is "'the fact that it is a simple matter to obviate any problem of bias simply by excusing the prospective juror and selecting another.'" *Id.* (quoting *Jenkins v. Parrish*, 627 P.2d 533, 536 (Utah 1981)).

The Utah Supreme Court has recently articulated a new standard governing challenges to a trial court's failure to remove jurors for cause. In *State v. Menzies*, 235 Utah Adv.Rep. 23, —— P.2d —— (Utah 1994), the court overturned the "automatic reversal" rule of *Crawford v. Manning*, 542 P.2d 1091 (Utah 1975), which deemed it prejudicial error if a defendant exhausted his or her peremptory challenges and used a peremptory to remove a juror who should have been removed for cause. *Id.* at 1093. Under the new *Menzies* standard, "[t]o prevail ... a defendant must demonstrate prejudice, *viz.*, show that a member of the jury was partial or incompetent." *Menzies*, 235 Utah Adv. Rep. at 24, —— P.2d at ——. "'So long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean

the [Constitution] was violated.'" *Id.* (quoting *Ross v. Oklahoma*, 487 U.S. 81, 88, 108 S.Ct. 2273, 2277, 101 L.Ed.2d 80 (1988)).

Defendant argues vigorously that *Menzies* should not apply retroactively, asserting that "[w]hen a new rule of criminal procedure constitutes a clear break with the past, it is not generally applied retroactively." *State v. Hoff*, 814 P.2d 1119, 1123 (Utah 1991).. However, we choose not to engage in an analysis of whether this new standard should apply because we conclude that even under the pre-*Menzies* automatic reversal standard, the trial court did not err in failing to strike juror Scholle for cause because he was not biased.

Under the pre-*Menzies* standard, we look first to see whether Scholle's responses during voir dire raise an inference of bias or whether they indicate he had "'a mental attitude of appropriate indifference.'" *State v. Olsen*, 860 P.2d 332, 334 (Utah 1993) (quoting *State v. Bishop*, 753 P.2d 439, 451 (Utah 1988)). In *Woolley*, this court discussed in detail the meaning of the term bias in the context of removing a juror for cause. We began by noting that the Utah Supreme Court has offered the following rubric for assessing challenges for cause:

> "Light impressions which may fairly be supposed to yield to the testimony that may be offered; which may leave the mind open to a fair consideration of that testimony, constitute no sufficient objection to a juror; but ... those strong and deep impressions which will close the mind against the testimony that may be offered in opposition to them; which will combat that testimony and resist its force, do constitute a sufficient objection to him [or her]."

*Woolley*, 810 P.2d at 443 (quoting *State v. Julian*, 771 P.2d 1061, 1064–65 (Utah 1989) (citations omitted)). We then directed trial courts as to the appropriate procedure if a juror's responses raise any question or inference of bias: "Once a juror's impartiality has been put in doubt, a trial judge must investigate by further questions to determine if the juror has merely 'light impressions' or impressions which are 'strong and deep' and which will affect the juror's impartiality." *Id.*

Scholle's twenty-year employment as a police dispatcher raised a question of potential bias that the trial court was obligated to address. However, both this court and the Utah Supreme Court have upheld denials of motions to strike law enforcement personnel for cause when questioning on voir dire dispels any suggestion of bias raised by the prospective juror's law enforcement background. For example, in *State v. Cobb*, 774 P.2d 1123 (Utah 1989), the defendant challenged the trial court's failure to remove for cause a prospective juror who had served as a police officer and had indicated that although he had made arrests, he believed he could be fair and impartial. *Id.* at 1127. Both the prosecution and defense counsel asked several questions, and the supreme court concluded the juror's answers "reflect[ed] that he was willing to keep an open mind and apply the law as the court instructed." *Id.* Accordingly, the court affirmed the trial court's refusal to dismiss the juror for cause.

The supreme court similarly affirmed the refusal to remove a prospective juror who had served as an Army officer and was responsible for drug abuse and distribution investigations. *State v. Hewitt*, 689 P.2d 22, 25–26 (Utah 1984). The juror was involved in quasi law enforcement work, but stated unequivocally that he would look at the case impartially. The court determined that although a juror's statement of impartiality may be meaningless in light of other facts suggesting bias, in this juror's case, "there [were] no additional facts in the record that suggest[ed] [he] had an impression so strong and deep as to constitute bias." *Id.* at 26.

This court has likewise upheld refusals to dismiss law enforcement personnel for cause when questioning on voir dire was adequate. For example, in *State v. Gray*, 851 P.2d 1217 (Utah App.), *cert. denied*, 860 P.2d 943 (Utah 1993), we considered whether a former Utah Highway Patrol officer should have been dismissed for cause. In individualized questioning, the officer made no statements suggesting anything other than an open mind. *Id.* at 1223. This court concluded that because the trial court had asked several "careful" questions and uncovered no bias, any infer-

ence of bias had been rebutted and the trial court had not abused its discretion in failing to remove the juror. *Id.*

Defendant urges that in the instant case, the trial court's questioning of Scholle was inadequate and pro forma because it asked fewer questions than other courts in similar circumstances. Defendant's approach is simply too mechanistic. "The level of questioning necessary to rebut an initial impression of bias 'will vary from case to case and is necessarily dependent on the juror's responses to the questions asked.'" *State v. Kavmark,* 839 P.2d 860, 862 (Utah App.1992) (quoting *Woolley,* 810 P.2d at 445), *cert. denied,* 853 P.2d 897 (Utah 1993).

Prospective juror Scholle was questioned both as part of the venire as a whole and individually. Relevant to this appeal are the following excerpts from the voir dire transcript. .

THE COURT: I would like to know if there is any member of the jury panel who would give the testimony of a law enforcement officer more weight solely because that individual bore the title of being a law enforcement officer or police would be in uniform, cloaked with the badge of authority, so to speak? But I would like to know if there is any member of the panel who would give the testimony of a law enforcement officer more weight solely because that individual was a law enforcement officer? And if so, would you please indicate this by raising your hand at this time. (Pause) The record may reflect that there are no hands raised.

And, members of the panel, let me ask somewhat the reverse of that question. I would like to know whether or not there are any panel members who has possibly have had [sic] poor experiences with law enforcement officers that possibly those poor experiences might also prevent you from being fair and impartial in evaluating the testimony of a law enforcement officer? And if so, would you please also indicate this by raising your hand at this time. (Pause) The record may reflect that there are no hands raised.

... What I would like to know is whether or not, members of the panel, any of you have ever been employed in a law enforcement capacity. Also, I would like to know whether or not any of you have any close friends or close family members who are employed as law enforcement officers and if so, would you please indicate this by raising your hand at this time.

In response to this last inquiry, six people, including Scholle, raised their hands. After questioning several other prospective jurors, the trial court turned its attention to Scholle.

THE COURT: Who were you thinking of, sir?

MR. SCHOLLE: I was employed 20 years as a dispatcher. Ten years it was [a] part-time second job with Midvale City Police. And then I worked eight years for the County Sheriff's Department in Cleveland, Ohio.

THE COURT: In what capacity?

MR. SCHOLLE: As a dispatcher and then twice—once for six months on a temporary job, and then about a year with the Salt Lake County Police as a dispatcher.

THE COURT: So the occasions that you were employed with law enforcement offices or agencies was as a dispatcher; is that correct?

MR. SCHOLLE: It has always been as a dispatcher, yes, sir.

THE COURT: Were you ever involved in the investigation phase of any alleged criminal offense?

. . . .

MR. SCHOLLE: No, never.

THE COURT: Did you ever testify as a witness or anything of that nature?

MR. SCHOLLE: No.

THE COURT: Do you think that experience, Mr. Scholle, that you described would prevent you from being fair and impartial if you were a juror in today's case?

MR. SCHOLLE: It would not affect my opinion.

Scholle's response that prompted individualized questioning indicated only that he had law enforcement experience; it did not involve a stated bias. At no time did he indicate that he would give more or less weight

to a police officer's testimony based on his experiences. In individualized questioning, Scholle testified he was not involved in criminal investigations or prosecutions. The court asked several follow-up questions and failed to uncover any indication that Scholle could not keep an open mind and apply the law as instructed. Scholle's ultimate statement that his experience as a police dispatcher "would not affect [his] opinion" dispelled any question of bias, in light of the absence of surrounding facts that would indicate otherwise. Thus, we conclude that even under the pre-*Menzies* standard, the trial court correctly declined to remove prospective juror Scholle for cause.

## II. ADMISSION OF "MUG SHOT" INTO EVIDENCE

Defendant next argues that the trial court erred in admitting into evidence a mug shot photograph. He claims that the photograph was not admissible because it brought to the jury's attention evidence of his prior criminal activity, which is generally inadmissible under Rule 404(b) of the Utah Rules of Evidence.[1] The State responds that the photograph was properly admitted under Rule 404(b) because it proved identity and because it was admitted only after defendant elicited testimony regarding its existence when cross-examining Detective Lucas.

■ We agree with the State that defendant cannot on appeal attack the admission of the photograph because he himself opened the door to its introduction on cross-examination. *State v. Barney*, 681 P.2d 1230, 1231 (Utah 1984); *accord State v. Pacheco*, 778 P.2d 26, 30 (Utah App.1989) (acknowledging "[t]he admission of improper photographs has been held to not constitute reversible error where defendants opened the door for admission"). Federal case law similarly prohibits a defendant from challenging the admission of prior bad acts evidence when he or she was responsible for its introduction. For example, in *United States v. Guinn*, 454 F.2d

29, 37 (5th Cir.), *cert. denied*, 407 U.S. 911, 92 S.Ct. 2437, 32 L.Ed.2d 685 (1972), identification was at issue, and the defendant cross-examined a witness about the use of photographs for identification. The Fifth Circuit Court of Appeals concluded:

> Although, under certain circumstances, admission of suggestive photographs tending to allude to a criminal record or bad character, might well result in reversible error, this is not such a case. Here, the *admission of the photographs will not result in reversal because the door for the admission was opened by the defendants....* It was proper for the government then, on redirect, to introduce the photographs to clear up the doubt as to the identification.

*Id.* (emphasis added).

Furthermore, any prejudicial effect of the photograph was minimal as the proverbial cat was out of the bag after defense counsel cross-examined Detective Lucas. On direct examination, Detective Lucas made no mention of the mug shot. Then, on cross-examination, the following exchange occurred:

DEFENSE COUNSEL: You haven't participated in viewing people in a line up to try and identify which person was involved with [defendant's roommate] and the transaction in this case, have you?

DETECTIVE LUCAS: It wasn't necessary.

DEFENSE COUNSEL: Have you viewed a photo spread, a series of photographs, to see if you could identify that person?

DETECTIVE LUCAS: It took only one to identify it.

DEFENSE COUNSEL: And what photograph was that?

DETECTIVE LUCAS: *I am afraid that if I mention that it may prejudice the jury.* (Emphasis added).

DEFENSE COUNSEL: Well, you saw a photograph of only Mr. Ramos, would that be accurate?

---

1. Rule 404(b) states:
   Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for

other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Utah R.Evid. 404(b).

DETECTIVE LUCAS: Yes, it was provided to the County Attorney.

DEFENSE COUNSEL: And you didn't see that in conjunction with six or seven other photographs from which you had to select one; is that right?

DETECTIVE LUCAS: That is correct.

(Emphasis added).

■ This testimony came after defense counsel had asked numerous questions tending to cast doubt on Detective Lucas's identification of defendant as the perpetrator. On redirect, the State attempted to introduce the photograph, and the court subsequently admitted it after excising the booking information but retaining the frontal and profile shots. This is exactly the type of scenario that occurred in *Barney*, in that the quoted testimony traces the introduction of the photograph to defendant. Moreover, even without the introduction of the photograph, Detective Lucas's direct testimony alerted the jury that the photograph being discussed was a mug shot. Accordingly, we find no error in the admission of the mug shot into evidence.[2]

## III. LIMITING CROSS–EXAMINATION OF DETECTIVE LUCAS

■ Finally, defendant argues that the trial court erred in limiting his cross-examination of Detective Lucas.[3] A trial court "has discretion to limit examination 'to preclude repetitive and unduly harassing interrogation,' or to prevent parties from embarking on 'fishing expeditions.'" *State v. Lactod*, 761 P.2d 23, 25 (Utah App.1988) (quoting *State v. Leonard*, 707 P.2d 650, 656 (Utah 1985)). However, when cross-examination

goes to bias and motive, the Utah Supreme Court "has been careful to allow wide latitude for examination." *State v. Rammel*, 721 P.2d 498, 499 (Utah 1986). Nevertheless,

> [w]e will not set aside a verdict because evidence may have been erroneously excluded, unless that evidence would probably have had a substantial influence in bringing about a different verdict. Where it is unlikely that the excluded testimony prejudiced defendant's rights in a substantial manner, the error is harmless and the verdict is not subject to reversal.

*Lactod*, 761 P.2d at 27.

■ We conclude that the trial court did not exclude evidence relevant to Detective Lucas's bias or motive. On direct examination, Detective Lucas described briefly his work as an undercover officer. When questioned on cross-examination, he testified at length as to the methods he employed in undercover drug investigations. For example, he described growing his hair and beard, wearing unusual clothing, assuming a different name, concocting a past including a criminal record and previous employment, and taking similar measures to conceal his identity. He recounted his extensive undercover experience and estimated the large number of drug-related investigations and arrests in which he was involved. Furthermore, he admitted that his work by its very nature involved deception.

When asked whether he used confidential informants, he replied that he rarely did so and that he had not used one in the instant case. Nonetheless, he explained what he did know about the use of such informants, cautioning that he was "not real familiar with

2. The photograph satisfies Rule 404(b) of the Utah Rules of Evidence because it was relevant to the contested issue of identity. *See State v. Albretsen*, 782 P.2d 515, 516–17 (Utah 1989) (affirming admission of mug shot to corroborate identification testimony pursuant to Rule 404(b) when alibi defense asserted); *accord State v. Owens*, 15 Utah 2d 123, 125, 388 P.2d 797, 798 (1964) (admitting mug shot on issue of identification). Normally, we would further consider whether it was admissible after the balancing required under Rule 403 of the Utah Rules of Evidence. However, because we conclude that defendant elicited the introduction of the photograph and cannot therefore challenge its admission on appeal, we do not undertake a Rule 403

analysis and do not consider whether the photograph was unduly prejudicial because the frontal and profile shots were not separated.

3. On appeal, defendant also argues that the trial court's ruling violated his right to confrontation under the Sixth Amendment to the United States Constitution and article I, section 12 of the Utah Constitution. However, at trial, defense counsel raised only the relevance line of argument and did not specifically object on confrontation clause grounds. Inasmuch as defendant waived the objection, we will not consider it for the first time on appeal. *See State v. Morrell*, 803 P.2d 292, 294 n. 1 (Utah App.1990).

what happened to those individuals." When asked whether an informant might avoid criminal charges in exchange for information, he replied that while it might occur, "That is not my decision. That is the County Attorney's decision." Thus, Detective Lucas indicated that he had no control over the treatment of informants and in any event had not used one in this case. After Detective Lucas indicated that the County Attorney was responsible for making deals with defendants, defense counsel asked, "Another possible way would be if those individuals were already charged with something, the charges might be dismissed or decreased in severity?" After an off-the-record discussion, the trial court sustained the prosecutor's objection to that question, and defense counsel resumed another line of questioning.

Defense counsel's question was virtually identical to the previous question, to which Detective Lucas responded that he had no knowledge or responsibility. Furthermore, in light of his testimony that he rarely used informants and had not used one in this case, the questioning went far beyond the issues involved in this case. Testimony on the County Attorney's treatment of hypothetical informants not used in this case had at best only a tenuous link to Detective Lucas's alleged bias and motive. Furthermore, since Detective Lucas had previously indicated that he was not responsible for making deals with informants, any answer to defense counsel's questions would have been repetitive.

Defense counsel was permitted to elicit ample testimony describing the lengths to which Detective Lucas would go during a drug investigation. We conclude that the trial court acted within its discretion in limiting questioning to the minor extent that it did and did not erroneously exclude evidence that would have had a substantial influence in bringing about a different verdict.

## CONCLUSION

We reject defendant's challenge to the trial court's failure to remove prospective juror Scholle for cause. Defendant cannot complain of the admission of his mug shot photograph when he opened the door to its introduction. Finally, the trial court properly limited the cross-examination of Detective Lucas. We therefore affirm defendant's conviction.

DAVIS and ORME, JJ., concur.